**Thomas G. STEPH, Individually and as guardian of Thomas Carter Steph, a minor, Plaintiff-Appellant,**

**v.**

**James Harris SCOTT, Curt Steib, John Alvin Hay, et al., Defendants-Appellees.**

No. 87–1397.

United States Court of Appeals, Fifth Circuit.

March 22, 1988.

---

Robert H. Thomas, Mark M. Donheiser, Strasburger & Price, Dallas, Tex., for Interfirst Bank and Bassett.

Jack N. Little, Little, Palmer & Williams, Big Spring, Tex., for Central Nat. Bank.

David C. Bakutis, Sloan Blair, Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, Tex., for Steib.

Richard W. Davis, Davis, Wardlaw, Hay & Wittenburg, Angelo, Tex., for Hay and Scott.

James S. Steph, Okmulgee, Okl., for plaintiff-appellant.

Before CLARK, Chief Judge,
BRIGHT * and GEE, Circuit Judges.

CLARK, Chief Judge:

The district court entered summary judgment dismissing an action by the natural guardian of a minor trust beneficiary against former and present trustees and

---

* Circuit Judge of the Eighth Circuit, sitting by designation.

repository banks on grounds that the suit was barred by res judicata. Finding that all claims before the district court were decided in the prior state court action and that the district court had no jurisdiction to entertain a collateral attack on the state court judgment, we affirm.

## I.

This case arises out of a trust created by the last will and testament of Patricia Scott Steph who died in 1971. The will established a trust for each of her three children, Gwin Harris Steph, David Ledyard Steph and Thomas Carter Steph. Thomas Carter Steph (Steph junior) is the son of the appellant, Thomas G. Steph (Steph senior). The other two children were by a previous marriage. The will appointed Curt Steib and James Harris Scott executors of Patricia Scott Steph's estate and made them testamentary trustees for her children.

In 1973, Scott and Steib sued Steph senior for the wrongful death of his wife Patricia and for an accounting of certain funds in his wife's estate. The suit ended in a settlement agreement signed in June 1973.

In May 1977, Steph senior petitioned the district court of Tom Green County, Texas for approval of the 1973 settlement agreement and of an accounting submitted to the court. The court entered an order reciting that it had jurisdiction over the suit and that all necessary parties had been served.

The court stated that Curt Steib, James Harris Scott, Steph senior, a representative of the First Hutchings-Sealy National Bank of Galveston (the new repository of trust funds), and Alvin Hay and Roland Bassett (the successor trustees) had appeared before the court. Steph junior, who was still a minor, was represented by his guardian ad litem, Marilyn Aboussie, and by his natural guardian, Steph senior.

In the judgment, the court accepted the resignation of Curt Steib as trustee of the estate and the resignation of James Harris Scott as trustee for the Steph junior trust. The court approved the appointment of the First Hutchings-Sealy National Bank of Galveston and Roland Bassett as substitute trustees for the Steph junior trust. It approved the transfer of Steph junior's trust assets from the Central National Bank of San Angelo to the First Hutchings-Sealy Bank. The court accepted the settlement agreement dividing all of the property in the estate of Patricia Scott Steph and assigning all assets not mentioned in the agreement to the residuary estate for the benefit of the children. Finally, the court approved an accounting of the trusts and discharged the trustees from any liability through June 30, 1977.

In September 1983, Steph senior filed this suit in district court naming Scott, Steib, Hay, Bassett, the Central National Bank of San Angelo and the First Hutchings-Sealy Bank as defendants. The suit alleged that Scott, Steib, Hay and the Central Bank of San Angelo had mismanaged Steph junior's trust and converted the trust funds to their own use. He demanded the return of the converted funds which he believes exceed $500,000.00 and an accounting of his son's trust. He alleged that the First Hutchings-Sealy Bank and Bassett were liable for funds converted by the former trustees because they had a fiduciary duty to oversee and account for Steph junior's assets. Steph senior demanded punitive damages of $1,500,000.00.

The six defendants moved for summary judgment on grounds of res judicata. The district court found that all parties in this action were before the court in Tom Green County and that the same issues now before the district court were litigated and decided in state court.[1] It granted the defendants' motion for summary judgment. The Stephs, senior and junior, appeal. We affirm.

## II.

Steph senior advances several reasons why his suit was not barred by res judica-

---

**1.** Central National Bank of San Antonio was not a named party to the action in Tom Green County, Texas.

ta. First, he states that the Tom Green County judgment is not binding on Steph junior because Steph junior did not appear in state court and was given no summons or notice of the state court proceeding.

■ Res judicata principles of the rendering state control the preclusive effect given to a judgment by a federal court. 28 U.S.C. § 1738 (1966); *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985); *A.L.T. Corp. v. Small Business Admin.,* 801 F.2d 1451, 1456 (5th Cir.1986). Hence, Texas law controls this suit. Steph senior's contention finds no support in Texas law. A Texas court has jurisdiction to enter a judgment binding a non-present minor who is represented in court by his guardian ad litem. *In re Dudley's Estate,* 88 S.W.2d 616, 619 (Tex.Civ. App.1935). The Texas judgment stated that Steph junior was represented by both his natural guardian and his guardian ad litem.

However, Steph senior contends that the court's recitals of representation do not cure defects in service and notice to Steph junior because Steph senior was not actually present at the Tom Green County proceeding and because the appointment of the guardian ad litem was made without Steph senior's knowledge or consent and was therefore a nullity. Steph senior's allegations amount to an attack on the Tom Green County court's recital of jurisdiction over some of the defendants. Assuming for purposes of the summary judgment motion that these allegations were true, they would, at most, render the judgment voidable, not void, and thus could not be the basis of a collateral attack in federal court.

■ Applying Texas law, a federal court may entertain a collateral attack on a state court judgment in four instances: 1) if the state court lacked jurisdiction over the party or his property; 2) if the state court lacked jurisdiction over the subject matter of the suit; 3) if the state court lacked jurisdiction to enter the particular judgment rendered; or 4) if the state court lacked the capacity to act as a court.

*Ranger Insurance Co. v. Robertson,* 680 S.W.2d 618, 620 (Tex.Ct.App.1984) (*citing, Austin Independent School District v. Sierra Club,* 495 S.W.2d 878 (Tex.1973); Hodges, Collateral Attack on Judgments, 41 Tex.L.Rev. 163, 164 (1962)). However, even if one of these four defects makes a state judgment ripe for collateral attack, the federal court may not void the judgment unless the defect appears on its face. Defects which do not appear on the face of the judgment can only be corrected on direct attack. *Id.; Browning v. Placke,* 698 S.W.2d 362, 363 (Tex.1985).

■ In this case, the Texas court recited that it had personal and subject matter jurisdiction over all of the parties. These jurisdictional recitals were binding on the district court and rendered the Tom Green County judgment absolutely immune from collateral attack. *Waldron v. Waldron,* 614 S.W.2d 648, 650 (Tex.Civ.App.1981). Hence, we cannot consider the defects alleged by Steph senior. However, the parties are free to reassert these defects on direct attack before the appropriate Texas appellate court in any proper proceeding available to them.

### III.

■ The district court included Roland Bassett, Alvin Hay and the First Hutchings–Sealy Bank in its summary judgment order. However, it is conceivable that these trustees who were not appointed until 1977 and the post 1977 repository of trust funds could have committed breaches of fiduciary duty not barred by the 1977 judgment.

Steph senior does not make clear whether he thinks that Bassett, Hay and the First Hutchings-Sealy Bank are liable for breaches of fiduciary duty that occurred after the 1977 judgment. However, in his deposition he does state that his only complaint against Bassett and the First Hutchings-Sealy Bank is that "they have failed to pursue the recovery of any funds which may have been mishandled when the trust account was here in San Angelo." He admits in his deposition that he has received

an accounting of Steph junior's trust every six months since the new trustees took over and that he has no specific complaints about how the new trustees have made disbursements and handled trust income. This testimony indicates that Steph senior's claims against Bassett and the First Hutchings-Sealy Bank are entirely derived from claims litigated and decided in the 1977 judgment. Hence, they were properly held to be barred by res judicata. *Hammonds v. Holmes,* 559 S.W.2d 345, 347 (Tex.1977); *Maxey v. Citizens National Bank of Lubbock,* 507 S.W.2d 722, 726 (Tex.1974).

Additionally, the will of Patricia Scott Steph explicitly exempts successor trustees from liability for the actions or omissions of their predecessor trustees except in cases of actual fraud.[2] Steph senior did not allege actual fraud. Therefore, Bassett and Hay were under no legal duty to pursue claims against their predecessor trustees.

Further, the two banks cannot be held liable for any post–1977 breaches of fiduciary duty in the management of Steph junior's trust. The First Hutchings-Sealy Bank and the Central National Bank of San Angelo properly assert that they owed no fiduciary duty to Steph junior. The banks were only the repositories of trust income. Neither bank had discretionary authority over the disbursement of trust funds. The banks' only legal obligation was to comply with the instructions of the trustees. *City of San Antonio v. Burke,* 65 S.W.2d 408, 409 (Tex.Civ.App.1933). The banks could not question the trustees' use of trust funds and, in the absence of notice to the contrary, had the right to assume that the trustees were not mishandling funds. *Id.*

■ Finally, Steph senior has indicated that he would like an accounting of the trust since 1977. A petition for accounting is a state probate matter which will typically not be entertained by a federal court. *Moore v. Lindsey,* 662 F.2d 354, 361 (5th Cir.1981). However, this decision does not

limit Steph senior's right to petition the Texas probate courts for such relief.

For the foregoing reasons, the order of the district court granting summary judgment is

AFFIRMED.

---

**2.** Clause 13 of the will provides:
   "Insofar as shall be permitted by law, my Executors and/or Trustees shall not be liable for any act or omission in connection with the administration of my estate or the respective trusts, nor for any loss or injury to the property held in my estate or the respective trusts, except only for actual fraud."