In re Donald G. PANSEGRAU and Sue D. Pansegrau, Debtors.

Gerald GEISLER, Plaintiff,

v.

Donald G. PANSEGRAU and Sue D. Pansegrau, Defendants.

Bankruptcy No. 389–32381 RCM–7. Adv. No. 389–3771.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

March 8, 1995.

Joel Held, Mankoff Hill Held & Metzger, Dallas, TX, for Gerald Geisler.

David L. Venable, Houston, TX, Michael F. Pezzulli, Pezzulli & Associates, Dallas, TX, for debtors.

## MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

Debtors Donald G. Pansegrau and Sue D. Pansegrau ("Defendants" or "Pansegraus") move to dismiss the amended §§ 523 and 727 complaint of Gerald Geisler ("Plaintiff" or "Geisler") pursuant to Fed.R.Civ.P. 56(b), applicable through Bankr.R. 7056. Following are the Court's findings of fact and conclusions of law pursuant to Bankr.R. 7052.

■ The Court heard Defendants' motion on January 30, 1995. Defendants are entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court reviews the evidence in the light most favorable to the nonmoving party. *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir.1992). Defendants base their summary judgment motion on a *res judicata* defense, and on Geisler's lack of standing to assert alter ego clauses, and must demonstrate that no material issue of fact exists with respect to their defense. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J). Defendants' contentions are broad enough to encompass the defense of collateral estoppel.

Summary judgment is granted on Debtor Donald Pansegrau's motion, but denied as to Sue Pansegrau, on the Geisler §§ 523(a) and 727 complaint. At the time of the State Court trial and take nothing judgment referred to hereafter, Sue Pansegrau had been

dropped from the State Court suit. Donald Pansegrau was the only remaining Pansegrau defendant therein. Sue Pansegrau might be able to contend by summary judgment, which she has not done so far, that no § 523(a) evidence was presented against her, but she did not do this. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hanks v. Transcontinental Gas Pipe Line Corp., supra,* 953 F.2d 996; *Ruiz v. Whirlpool, Inc.,* 12 F.3d 510, 513 (5th Cir.1994). As to the § 727 complaint against Sue Pansegrau, this Court, on September 18, 1990, entered findings that "1. Geisler is a creditor of Defendants Donald G. and Sue D. Pansegrau.... 15. The aforesaid facts be deemed established, and that trial be had on the remaining issues."

### Geisler's § 523 Claims Against Donald Pansegrau

■ Plaintiff maintains that his debt against Donald Pansegrau is nondischargeable under § 523(a)(2), (4), and (6). Plaintiff cannot rely on these sections as against Donald Pansegrau, however, because Plaintiff cannot demonstrate, as against Donald Pansegrau, a debt for fraud, or for money obtained by false pretenses (§ 523(a)(2)(A)), or a debt for fraud or defalcation in a fiduciary capacity (§ 523(a)(4)), or a debt for willful and malicious injury (§ 523(a)(6)). Section 523(a) eliminates dischargeability only upon a 'debt.' The Bankruptcy Code defines 'debt' as liability on a claim. 11 U.S.C. § 101(12). Therefore, to be successful under § 523(a), Plaintiff must demonstrate that Defendant Donald Pansegrau is liable on his claim for fraud, breach of fiduciary duty, or willful and malicious injury. *See Ziff v. Ziff (In re Ziff),* 1993 WL 669427, *3 (N.D.Tex.1993) (Section 523 requires some basis of liability before a debt can be exempted from discharge).

A state court jury has determined that Defendant Donald Pansegrau is not liable to Plaintiff for fraud, breach of fiduciary duty, conspiracy, negligence, gross negligence, and negligent misrepresentation. Defendants' Exhibit ("DX") 38. Because Plaintiff's § 523 claims against Donald Pansegrau involve the identical issues already litigated in state court, collateral estoppel bars any relitigation

of these issues against Donald Pansegrau. *See RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1293 (5th Cir.1995). Therefore, Plaintiff cannot prove his dischargeability claim under § 523.

■ Bankruptcy courts should apply collateral estoppel doctrine in the context of § 523 proceedings. *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991); *RecoverEdge, supra,* 44 F.3d 1284, 1294–95. When a bankruptcy court determines whether to apply issue preclusion under § 523, the court should apply federal issue preclusion rules. *See Cardenas v. Stowell (In re Stowell),* 113 B.R. 322, 331 (Bankr.W.D.Tex.1990); *see also, Sheerin v. Davis (In re Davis),* 3 F.3d 113, 114 (5th Cir.1993) (Applying federal issue preclusion rules under § 523); *Harold V. Simpson & Co. v. Shuler (In re Shuler),* 722 F.2d 1253, 1265 n. 2, 1258 n. 10 (5th Cir.1984), *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984) (Applying federal collateral estoppel rules under § 523 and noting that the "full faith and credit" accorded state court judgments has been limited by competing federal interests [the bankruptcy court's exclusive jurisdiction to determine dischargeability]). Collateral estoppel involves three elements:

(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action.

*RecoverEdge,* 44 F.3d at 1990. Geisler and Donald Pansegrau have actually litigated the issues of fraud, breach of fiduciary duty, negligence, gross negligence, and civil conspiracy and the determination of these issues was necessary in rendering a take-nothing judgment. (State Appellate Court Opinion pp. 6–7). Normally, the court must also find that the issues tried in State Court are identical to those alleged in Geisler's § 523 claim. It appears that such issues are substantially identical.

However, this court need not inquire into the identity between the elements of Geisler's state court claims and the discharge

standards under § 523 because Geisler's dischargeability complaint simply realleges the facts and conclusions contained in his state court pleadings.[1] *RecoverEdge, id.* at 1294. (Applying collateral estoppel where the plaintiff based its discharge complaint on "precisely the issue decided by the jury" in a previous proceeding). In addition, Geisler's § 523 allegations basically restate his "causes of action" in state court. DX 40 ¶¶ 33, 34, 35, 36, 38–40, 42, 43, 45, 56; Plaintiff's Adversary Complaint ¶¶ 39–49. This falls squarely within the Fifth Circuit's pronouncement in *RecoverEdge:* "Where, as here, the factual issue that forms the basis for the creditor's theory of nondischargeability has been actually litigated in a prior proceeding, neither the creditor nor the debtor may relitigate those grounds."

*Id.* at 1294.

■ As pointed out in the 52–page state appellate court's opinion (the "Opinion"), the state court Special Master found against Defendant Donald Pansegrau for breach of fiduciary duty, constructive fraud, negligence, and gross negligence, fraud, negligent misrepresentation, conversion, and breach of contract (Opinion p. 5). However, the state court submitted the damages issues to the jury, and the jury found no damages against Donald Pansegrau. As a result, the state trial court entered a take-nothing judgment, providing Geisler take nothing against Texas Commerce Bank and Donald Pansegrau. Such judgment was affirmed on appeal. The jury's findings and state court take-nothing judgment wiped out the legal significance of the Special Master's findings. Likewise, the jury findings of no damages and the state court take-nothing judgment wiped out the

legal significance of this Court's partial summary judgment entered June 5, 1990, finding a fiduciary relationship between Donald G. Pansegrau and Plaintiff. The jury specifically found (Opinion pp. 6–7):

Question 1: Zero damages to Geisler proximately caused by Pansegrau's fraud; [Pansegrau is defined in the court charge as Donald Pansegrau].

Question 2: That the representations or admissions, if any, constituting fraud were not made with malice toward Geisler;

Question 4: That Pansegrau did not breach his fiduciary duty to Geisler that proximately caused damages to Geisler;

Question 6: That zero damages would fairly and adequately compensate Geisler for damages, if any, proximately caused by breach of fiduciary duty by Pansegrau;

Question 7: That Geisler should be awarded zero sums of money against Pansegrau and the Bank as exemplary damages as a consequence of any breach of fiduciary duty;

Question 8: That the Bank did not breach its contractual duties, if any, owed to Geisler and P & G arising from their signatory card agreements;

Question 10: That Geisler's negligence proximately caused injury, if any, to Geisler made the basis of the suit;

Question 12: That zero sum of money would fairly and reasonably compensate Geisler for damages or harm, if any, proximately caused by the negligence, if any, in question;

Question 13: That neither Pansegrau nor the Bank were guilty of gross negligence;

---

1. Plaintiff's adversary complaint against Donald Pansegrau basically traces the factual allegations contained in his state court action. DX 40 ¶¶ 2–32; Geisler's First Amended Complaint to Determine Dischargeability of Debt ¶¶ 9–38. In both pleadings, Geisler predicates the Donald Pansegrau liability upon the loss of his investment in P & G joint venture. In ¶ 3 of the adversary complaint, it is recited that Pansegrau sometimes collectively refers to Donald and Sue Pansegrau.

In Geisler's fifth amended state court complaint, which defines Pansegrau as Donald Pansegrau, at paragraph 31, he states:

Because of the actions of Pansegrau, Melbert and TCB as more fully set forth above, Dr.

Geisler and P & G were deprived of funds in excess of $1,600,000 and as such, the business purpose of P & G was thwarted and Dr. Geisler lost his entire investment therein, to wit, an amount in excess of $4,000,000.

In the first amended adversary complaint herein, at paragraph 37, Geisler alleges:

Because of the actions of Pansegrau, Melbert and TCB as more fully set forth above, Dr. Geisler and P & G were deprived of funds in excess of $1,600,000.00 and as such, the business purpose of P & G was thwarted and Dr. Geisler lost his entire investment therein, to wit, an amount in excess of $4,000,000.00.

Question 15: That neither Pansegrau nor the Bank engaged in a civil conspiracy against Geisler in connection with fraud;

Question 16: That Geisler was estopped from seeking damages against the Bank;

Question 17: That Geisler waived his right, if any, to seek damages from both Pansegrau and the Bank; and

Question 18: That the reasonable and necessary attorney's fees incurred by Geisler in this cause was $500,000.

The trial court rendered judgment on the verdict for Donald Pansegrau and the Bank and against Geisler and P & G. Geisler has already litigated the issues upon which he bases his right to § 523 relief against Donald Pansegrau. He cannot now reassert such claims in bankruptcy court. *RecoverEdge*, 44 F.3d 1284, 1294–95. Further, Geisler is collaterally estopped from asserting Donald Pansegrau's liability on Geisler's fraud, breach of fiduciary duty, and conspiracy claims.

### Geisler's Alter Ego Claims

■ These are owned by the Chapter 7 Trustee and not assertible by Geisler. *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir.1983); *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir.1987). Summary judgment is granted to both Defendants on these claims because Geisler has no standing to assert same.

### Geisler's § 727 Claims Against Donald Pansegrau

■ Geisler also asserts that this court should deny Donald Pansegrau's discharge pursuant to §§ 727(a)(2), (3), and (4). However, only creditors may assert a § 727 complaint. *In re Vahlsing*, 829 F.2d 565, 567 (5th Cir.1987). As discussed above, Geisler is collaterally estopped from asserting his above-referred-to claims against Donald Pansegrau. Unless Geisler can assert an additional basis of liability, summary judgment is appropriate.

In Plaintiff's summary judgment response (p. 6), he refers to notes (Ex. N thereto) signed by Geisler and Pansegrau, and P & G Joint Venture, their joint venture, and payable to Geisler and allegedly approximating over $3,438,713.62 and representing Geisler's capital contributions to P & G Joint Venture. Geisler further responds (pp. 6–7):

... During the trial, the Defendants were allowed to put on evidence supporting their defenses to Geisler's claims. Pansegrau's counsel introduced Defendants' Exhibit No. 21, which collectively included twenty-two (22) documents all entitled "Promissory Note" and all made payable in various sums of money to Geisler from P & G Joint Venture. (*See* Exhibit "N" attached hereto.) These documents reflect the total amount of capital contributions made by Geisler to P & G Joint Venture, over $3,438,713.62, for which he never recovered any benefit or return, and which amounts were wrongly diverted by Pansegrau without Geisler's knowledge or consent. At the trial, Pansegrau testified that these documents were prepared by an attorney, Bob Lee, and that Geisler wanted Pansegrau to have these documents prepared and sign them because he wanted additional security for his interest in P & G Joint Venture. Geisler's counsel objected to the admission of these documents, due to the fact that Geisler denied ever accepting these documents as converting his capital contributions to loans, and because there was no defense plead by Pansegrau of payment. The trial court sustained the objection and refused to admit them. After continued argument by Pansegrau's counsel, the trial court allowed such documents in evidence for the limited purpose of showing the intent of Pansegrau at the time the documents were made as to the issue of punitive damages, and *not* for the purposes of showing payment or any conversion of the capital contributions paid to P & G Joint Venture by Geisler. Because of the limited purpose in which the documents were allowed into evidence, no further evidence was presented and no issue was submitted to the jury as to whether or not these documents were induced by fraud on the part of Pansegrau to somehow "negate" Geisler's capital contributions to P & G Joint Venture, and the jury did not decide that issue in the state court action. Furthermore, it is highly probable

that the jury erroneously relied on Exhibit 21 as evidence of a "payment" or "conversion" of the debt owed to Geisler, despite the trial court's express rejection of the documents into evidence for that purpose, in support of their finding of no damages.

Therefore, the issue of whether the purported "Promissory Notes" were induced by fraud by Pansegrau in his capacity as a fiduciary to negate Geisler's capital contributions to P & G Joint Venture thereby obviating any debt was *not* presented to the jury or decided in the state court action, and has not been disposed of or affected in any way by the judgment entered therein. In the Affidavit of Gerald Geisler, M.D. in opposition to Defendants' Motion for Summary Judgment, Geisler affied that he (Geisler) did not request promissory notes to convert any equity in P & G to notes, nor did he ever intend to cause, consent to, or authorize any conversion of his capital contributions to P & G to notes, and that the documents were prepared by or on behalf of Pansegrau at Pansegrau's request, with Geisler having no knowledge of what they were for. (*See* Exhibit M, p. 5.) Thus, this controverting evidence creates fact issues regarding the purported "Promissory Notes" as they relate to Geisler's claim as a creditor for his capital contributions to P & G Joint Venture and Pansegrau's fiduciary duties in connection therewith, even if this Court gives full force and effect to the state court judgment, as such issues were not allowed and disposed of therein, which must be tried by this Court.

This Court's above-referred-to Bankr.R. 7056(d) findings entered on September 18, 1990, resulted from an August 8, 1990 hearing, and found, among other things, that "1. Geisler is a creditor of Defendants Donald G. and Sue D. Pansegrau.... 15. The aforesaid facts be deemed established, and that trial had on the remaining issues." Each cause of action stated in paragraphs 9–49 of Geisler's First Amended Complaint filed in this adversary is included, substantially verbatim, in the causes of action alleged by Geisler in his Fifth Amended State Court Complaint. Geisler filed a proof of claim, but such proof of claim is only relevant herein to

the extent it was timely alleged (Bankr.R. 4004), and carried forward in his timely § 727 complaint.

In Geisler's motion for relief from stay to proceed with his state court suit filed in July 1990, he states, in paragraph 6:

> Permitting the State Court Action to proceed to trial will be in the best interest of judicial economy and will provide for the *expeditious determination of Movants' claims* [*i.e., Geisler* P & G Joint Venture and Trinity Mills Business Park, Limited Partnership] *against Debtors* [*i.e.,* Donald G. Pansegrau and Sue D. Pansegrau] *including fraud claims which are at issue in a Complaint to Determine Dischargeability, pursuant to 11 U.S.C. § 523 and 727 before this Court.*

(Emphasis added). Per order singed August 21, 1990, the stay was lifted to permit the state court action to proceed, but, per the terms of the order, any judgment obtained could not be enforced without further order from the Bankruptcy Court.

Geisler chose to liquidate his claim against Donald Pansegrau in state court. He chose to proceed on his fraud, etc. theories, perhaps on the premise that a judgment against the co-defendant Bank might be more immediately collectable than one solely against Donald Pansegrau.

Further, Geisler may have been concerned that if he chose to sue specifically on the notes in the prior suit, as opposed to his various alternative theories, that a novation because of the notes might preclude his recovery on fraud, etc., thereby defeating his § 523 complaint and relegating him to § 727 relief only. Even in his adversary complaint, Geisler does not specifically sue on the notes.

 For purposes of the § 727 complaint, what is the relevance of this Court's Bankr.R. 7056(d) finding on September 18, 1990, that Geisler was a creditor? The state court did not have jurisdiction to adjudicate the § 727 complaint. *See Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Comer v. Comer (In re Comer),* 723 F.2d 737, 740 (9th Cir.1984) (*Brown* preserved the "exclusive jurisdiction of the

bankruptcy court to determine dischargeability"). However, the state court could adjudicate the underlying debt issues if such adjudication was not otherwise precluded by this Court's Bankr.R. 7056(d) findings on September 18, 1990. Such order was an interlocutory order. Both the state and bankruptcy courts had concurrent jurisdiction to adjudicate the underlying debt facts. When the state entered a final judgment on the "amount of debt" facts first, that judgment superseded the prior interlocutory judgment of this court, which has concurrent jurisdiction. *Hansler v. Mainka (In re Hansler),* 988 F.2d 35, 38 (5th Cir.1993).

Does the summary judgment record show that the parties or court intended to limit the state court adjudication of the monetary amount of Geisler's claim to only § 523(a)(2), (4) and (6) facts? *See Casperone v. Landmark Oil & Gas Corp.,* 819 F.2d 112, 114 (5th Cir.1987). The summary judgment record does not appear to support such a position.

The motion to lift stay was filed on July 8, 1990. The agreed order lifting stay was entered August 27, 1990. The Court's order entered September 18, 1990 shows that it arose out of a hearing held August 8, 1990. The motion to lift stay quoted above states that it will provide for an expeditious determination of Geisler's claims against the debtors, including fraud claims which are at issue in a complaint to determine dischargeability pursuant to 11 U.S.C. § 523 and objecting to discharge pursuant to 11 U.S.C. § 727 before this Court. Geisler's recitation of facts in his first amended adversary complaint were for purposes of outlining and supporting his § 523(a)(4) complaint (p. 16) and his constructive fraud complaint (p. 18), his conspiracy complaint (p. 19), and his fraud complaint (p. 20). At p. 21 of his complaint, he goes into his § 727 complaint without alleging any additional facts or claims to support any additional indebtedness.

■■■ The court will apply *res judicata* principles to the state court judgment with respect to the amount and validity of Donald Pansegrau's debt to Geisler. While the bankruptcy court may examine a purported judgment for defects which could render the judgment invalid, the court may not reexamine issues determined by judgment itself. *Heiser v. Woodruff,* 327 U.S. 726, 736, 66 S.Ct. 853, 858, 90 L.Ed. 970 (1946). Applying *res judicata* to the state court judgment for the purposes of the debt itself does not interfere with this court's obligation to determine § 727 dischargeability issues. Therefore, this court must apply *res judicata* to the state court's final judgment. *See, Browning v. Navarro,* 887 F.2d 553, 561 (5th Cir.1989) (When a state court decision does not interfere with the court's exclusive jurisdiction, "bankruptcy courts are bound by both branches of res judicata"); *Kapp v. Naturelle, Inc.,* 611 F.2d 703, 708 n. 6 (8th Cir.1979) ("It is clear, however, that the *Brown [Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) ] opinion assumes that a prior state court judgment is normally conclusive as to the validity and amount of the creditor's claim against the bankrupt"); *Comer, supra,* 723 F.2d at 740 (*Res judicata* bars bankruptcy courts from looking behind default judgments to determine the amount of the debt).

■■■ As discussed above, applying *res judicata* to the state court judgment insofar as the validity and amount of this Donald Pansegrau debt does not involve this court's exclusive jurisdiction. Therefore, Texas law governs the preclusive effect of a Texas court judgment. 28 U.S.C. § 1738 (1966); *Steph v. Scott,* 840 F.2d 267, 270 (5th Cir.1988); *Matter of Hansler,* 988 F.2d at 37 (Applying Texas *res judicata* rules to a Texas judgment in the context of a bankruptcy adversary). *Res judicata* prevents relitigation of any adjudicated claim, as well as matters which should have been litigated in the prior suit. *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex.1992). Texas has adopted the transactional approach to the application of *res judicata* principles. *Id.* at 631. Therefore, Plaintiff may not bring an action which arises out of the same transaction or series of transactions upon which he based his action in a previous lawsuit. *Id.* This Court should examine "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business under-

standing or usage." *Id. quoting* Restatement 2d of Judgments § 24(2).

■ Any claims on the notes would obviously arise out of the same transaction or transactions upon which Geisler based his prior state court suit. Geisler may not now sue on claims which, through the "exercise of diligence" could have been litigated in the prior suit. *Id.* at 628. Both actions arise from Donald Pansegrau's handling of Geisler's monetary contributions to P & G joint venture. Whether evidenced by notes or capital contributions, Geisler seeks the recovery for the same funds allegedly lost through Pansegrau's fraudulent schemes. Compare excerpts from Geisler's state court petition and Geisler's adversary complaint, note 1, *supra.* Therefore, *res judicata* bars any attempt by Geisler to sue on the promissory notes.

The take-nothing state court judgment on his claims and his inability to sue on the promissory notes render Geisler unable to establish a claim against Pansegrau. Geisler could only bring an action under § 727 if he was a creditor of Donald Pansegrau. 11 U.S.C. § 727(c) ("The trustee, a creditor, or the United States Trustee may object to the granting of a discharge"). All of Geisler's debt claims against Donald Pansegrau, which could support a § 727 filing are now barred by *res judicata.* Since he is no longer a creditor, he no longer has standing to pursue his objection to discharge. *In re Vahlsing, supra,* 829 F.2d at 567.

Judgment will be entered in accordance with the foregoing opinion.