# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 12, 2018

No. 17-50966

Lyle W. Cayce
Clerk

JB MORTGAGE COMPANY, L.L.C., as Assignee of CAP Holdings, Incorporated, doing business as Recovery Management International,

Plaintiff–Appellant

v.

KATHLEEN A. LORDEN; JUSTIN PRUITT; DON DAY; AMANDA DAY; KRISTINA WAGNER MOORE; KEVIN MICHAEL BARTON; ADRIANA MUNOZ; OBDULIA ARELLANO; JUAN ANTONIO RODRIGUEZ; BRIAN KRAUSE; DON CARMICHAEL; JAN CARMICHAEL; MICHAEL CURL; FRAXINUS LIMITED; KAREN MILLER, Trustee of Miller Family Trust; OSCAR HERRERA; ELIAMAR HERRERA; CRYSTAL KNOLL TERRANCE HOMEOWNER'S ASSOCIATION, INCORPORATED; JANET SANDERS; MONICA YAMADA; ANTONIO BENETTI; IRIS GLANZ, Trustee of the Iris Marcia Glanz Revocable Trust; JOHNNI HAJDA; RINE, also known as Rinhold Everett; RICHARD POSEY; MARIA COTO; MELINDA THAI; TIMOTHY NEIGHBORS; KEVIN BARTON; LAUREL ANN BROWNE; KEVIN VITEK; USA HOME TRADE, L.L.C.; JOHN BAYLOR; JUNIPER FIRST, L.L.C.; KAREN CRANDALL; MUNAZZA CROCE; CLAY WOODARD; MARLA WOODARD; RACHELLE ELLIOTT; MARK NELSON; AMERICAN HOMES 4 RENT PROPERTIES TWO, L.L.C.; Et Al,

Defendants–Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:13-CV-204

Before STEWART, Chief Judge, DENNIS, and WILLETT, Circuit Judges.

No. 17-50966

PER CURIAM:*

This case is about whether homeowners in the Crystal Knoll Subdivision of Georgetown, Texas have good title to their land. Because we agree with the district court that the RTC consented to the Sheriff's Sale and that Appellant JB's claim is time-barred, we AFFIRM.

## I. BACKGROUND

### A.    Factual

In the 1990s when Austin, Texas suburbs were beginning to grow rapidly, developers—Crystal Knoll Venture—spotted an opportunity. They purchased, platted, and subdivided land in Georgetown, Texas just north of Austin. Decades after the Crystal Knoll Subdivision came into being, CAP Mortgage sued, alleging it had superior title to the land. JB Mortgage Co. ("JB") has since taken CAP's place in this litigation as its assignee.

The parties have stipulated to the following facts. In 1984, the Jefferson Group—a general partnership in Texas—purchased a tract of land. That same day, the Jefferson Group executed a Deed of Trust payable to First National Bank of Georgetown.

The following year (1985), the Jefferson Group executed a Deed of Trust and Security Agreement for the benefit of Lincoln Savings & Loan Association ("Lincoln"). Lincoln's deed of trust secured a $5.5 million promissory note that matured two years later (1987). First National transferred its lien on the land to Lincoln. Now both the First National Deed of Trust and the corresponding lien on the property belonged to Lincoln—and the county records reflected this.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

No. 17-50966

Shortly after, Lincoln failed. The Resolution Trust Corporation ("RTC") was appointed Lincoln's receiver in 1990. The RTC obtained an Agreed Judgment against the Jefferson Group stating that the debt and lien on the land belonged to the RTC. However, it failed to obtain a writ of execution for collection or do anything else to collect. Furthermore, the RTC never recorded any judgment lien against the Jefferson Group on the property.

Meanwhile, Georgetown Independent School District ("GISD") sued to collect unpaid ad valorem property taxes. As Lincoln's receiver, the RTC participated in the tax foreclosure suit, filing (and amending) an answer, a motion for continuance, a second motion for continuance, participating fully in the case, and signing the foreclosure judgment. Judgment was rendered in the tax foreclosure suit in 1991, declaring the GISD tax lien superior to the RTC's (unrecorded) lien. Consequently, a Sheriff's Sale was held to satisfy GISD's tax foreclosure judgment.

Crystal Knoll Venture purchased the property at this Sheriff's Sale. Taking extra precaution, Crystal Knoll also purchased whatever interest the Jefferson Group (and another group, Equity Capital Partners) still had in the land. Satisfied that it had good title, Crystal Knoll began developing the tract, subdividing and platting it. The Appellees in this case are all homeowners who purchased parcels of the Crystal Knoll Subdivision. Nothing in the record interrupts the chain of title between Crystal Knoll and the current homeowners.

Appellant JB's claim to title goes as follows. In 1994—approximately two years after the Sheriff's Sale—the RTC transferred ownership in certain assets, including the disputed tract, to The Reliant Group, L.P. The homeowners do not stipulate, however, that the lien associated with the tract, or any valid property interest in the tract, was transferred. The various ownership interests in "certain assets" were then transferred from Reliant to

3

Quantum-Varde, to Varde Partners, to Brae Asset Management, to Lawyers Recovery and Litigation Services, to JB, to CAP Holdings (the original plaintiff in this case), back to JB.

## B.    Procedural

The original plaintiff, CAP Holdings, sued in March 2013. The district court granted summary judgment in favor of the homeowners, but CAP Holdings appealed to our circuit. We remanded, stating: "If, on remand, the district court concludes that the RTC did not 'consent' to the tax sale within the meaning of § 1825(b)(2), then the sale was conducted in violation of § 1825(b)(2), and is therefore void . . . ." *CAP Holdings, Inc. v. Lorden*, 790 F.3d 599, 607 (5th Cir. 2015); *see also* 12 U.S.C. § 1825(b)(2).

On remand, JB replaced CAP Holdings as plaintiff and moved for summary judgment for a declaration that its interest in the land is superior to the homeowners'. Several homeowners moved for summary judgment that JB Mortgage's claims are time-barred.

The district court held that JB Mortgage consented to the tax sale within the meaning of 12 U.S.C. § 1825(b)(2). Furthermore, it held, the homeowners have standing to assert the defense of limitations against JB Mortgage, whose claims are time-barred. JB Mortgage appeals.

## II. JURISDICTION AND STANDARD OF REVIEW

### A.    Statement of Jurisdiction

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. The district court rendered final judgment, so we have jurisdiction under 28 U.S.C. § 1291.

### B.    Standard of Review

"This court reviews a grant of summary judgment *de novo*, applying the same standard as the district court." *Romero v. City of Grapevine*, 888 F.3d 170, 175 (5th Cir. 2018). Summary judgment is proper "if the movant shows

No. 17-50966

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting FED. R. CIV. P. 56(a)).

### III. DISCUSSION

#### A.    The RTC Consented to the Sheriff's Sale

JB contends that the RTC—its predecessor-in-interest—never consented to the tax sale; thus, the sale is void in its entirety. *CAP Holdings*, 790 F.3d at 604. If the sale is void, then the Appellee homeowners' chain of title stemming from the Sheriff's Sale is no good. *See* 12 U.S.C. § 1825(b)(2) ("No property of the Corporation [RTC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation . . . ."). The Homeowners respond that the RTC's vigorous participation in the tax foreclosure suit, its signature on the foreclosure judgment, and its failure to appeal demonstrates "consent."

State law governs a collateral attack on a state-court judgment (such as the tax foreclosure judgment). *Cf. Steph v. Scott*, 840 F.2d 267, 270 (5th Cir. 1988). Texas presumes the judgment under attack is valid. *See Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994) (internal citations omitted). The burden is on the party attacking the state-court judgment to show why that judgment is void. *See id.*; *Armentor v. Kern*, 178 S.W.3d 147, 149–150 (Tex. App.—Houston [1st Dist.] 2005, no pet.). JB is unable to satisfy that burden.

The RTC had notice of the tax foreclosure suit. It participated in the tax foreclosure suit, filing (and amending) an answer, a motion for continuance, a second motion for continuance, participating fully in the case, and signing the foreclosure judgment. As the district rightly observed, the RTC "actively participated in the Tax Foreclosure Suit." The RTC even signed and agreed to a foreclosure judgment ordering the foreclosure of the GISD tax lien against

all others, including "Resolution Trust Corporation in its capacity as receiver for Lincoln Savings & Loan Association." The RTC did not file a motion for new trial, an appeal, or a writ of mandamus concerning the foreclosure judgment.

JB counters that the RTC consented only "as to form." Even though the RTC participated in the proceedings, it couldn't have consented because it *opposed* the court's decision. We disagree. The RTC had complete knowledge of the judgment and chose not to appeal or challenge the judgment. This implies consent.

JB's final argument against consent is that the FDIC—RTC's successor—could not locate tax foreclosure sale documents in response to a FOIA request decades later. The foreclosure judgment took place in 1991, 22 years before this case. The fact that the FDIC—a separate entity from the RTC—could not find certain documents relating to the judgment over two decades later is not "probative evidence of the non-existence of the documents." An inference from silence is not justified here.

JB has not offered sufficient evidence to successfully attack the Foreclosure Judgment and corresponding Sheriff's Sale. *See Stewart*, 870 S.W.2d at 20; *see also Armentor*, 178 S.W.3d at 149–150. The district court is correct: The Sheriff's Sale did not violate § 1825(b)(2). Accordingly, we hold that the Sheriff's Deed is valid.

## B.     JB's Claim is Time-Barred

Appellee Homeowners assert the defense of limitations. They claim limitations ran in 1996 (if not earlier). Before we can assess whether or not JB is time-barred, we must determine whether the homeowners have standing to assert the limitations defense. They do.

### 1. Standing

The last time this case came before us, we said that "Texas law requires a party to be in privity with the original debtor in order to assert the debtor's

limitations defense." *CAP Holdings*, 790 F.3d at 607. In Texas, "only a mortgagor or party in privity with the mortgagor has standing to contest the validity of a foreclosure sale pursuant to the mortgagor's deed of trust." *Goswami v. Metro Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1998). However, "when the third party has a property interest, whether legal or equitable, that will be affected by such a sale, the third party has standing to challenge such a sale to the extent that its rights will be affected by the sale." *Id.* (citing *Am. Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 586 (Tex. 1975)). "Concomitantly, a property owner whose title is challenged based on a faulty foreclosure has standing to defend his title." *Saravia v. Benson*, 433 S.W.3d 658, 666 (Tex. App—Houston [1st Dist.] 2014, no pet.).

As discussed, the Sheriff's Sale and corresponding Sheriff's Deed are valid. Appellee Homeowners, therefore, have a valid chain of title to establish their interest in the property. Accordingly, they have standing to assert the defense of limitations.

### 2. *The clock ran out in 1996 at the latest*

If JB has an interest in the property, that interest must come from the Lincoln Deed of Trust that secured a promissory note maturing on December 6, 1987. Lincoln never sought to foreclose on the Lincoln Deed of Trust lien. Nor did it do anything to collect on the note. Likewise, the RTC (as Lincoln's receiver) never attempted to collect.

FIRREA gives the RTC either six years to sue to collect or the same amount of time Texas would give, whichever period is longer—but Texas only provides four years to sue to collect debt. 12 U.S.C. § 1821(d)(14)(A); TEX. CIV. PRAC. & REM. § 16.004(a)(3). The statute of limitations began to run when the RTC was appointed receiver or when the cause of action on the note accrued, whichever was later. 12 U.S.C. § 1821(d)(14)(B). The Jefferson Group's promissory note matured in 1987. The RTC became Lincoln's receiver in 1990.

No. 17-50966

So, the limitations period began running in 1990 and ran out six years later in 1996. *Id*. When the note became unenforceable in 1996, the Foreclosure Judgment and Sheriff's Sale had already extinguished the lien securing the note. The RTC never sued during this time. Neither did its successors-in-interest. Accordingly, JB Mortgage's claims are time-barred.

## CONCLUSION

The RTC consented to the Sheriff's Sale. JB cannot come to court two-and-a-half decades later and stir-up mischief. The homeowners have good title in addition to their equitable interest as the land's residents. Therefore, they may assert the defense of limitations. Moreover, that defense is effective here. We AFFIRM the district court's dismissal.