**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 97-30188

TREMBLING PRAIRIE LAND COMPANY,

Plaintiff,

versus

ODETTE VERSPOOR, wife of/and
R.J. D'AGOSTINO,
ELIZABETH NAN PERCY, wife of/and
CHARLES F. D'AGOSTINO and
LAVERNE (aka LeVerne) BROWN,
wife of/and WOODROW BROWN, SR.,

Defendants.

FEDERAL INSURANCE DEPOSIT CORPORATION,

Intervenor Plaintiff-Appellee,

versus

TREMBLING PRAIRIE LAND COMPANY,
MARK E. PENEGUY, EILEEN COMER GAMBEL,
R.J. D'AGOSTINO, DOROTHY ODETTE VESPOOR
D'AGOSTINO, LAVERNE (aka LeVerne) BROWN,
WOODROW BROWN, SR., CHARLES F. D'AGOSTINO,
ELIZABETH NAN PERCY D'AGOSTINO,

Intervenor Defendants,

TREMBLING PRAIRIE LAND COMPANY,

Intervenor Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Louisiana

July 1, 1998

Before REYNALDO G. GARZA, DUHÉ,  and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This is an appeal of an order of summary judgment entered by the district court in favor of the Intervenor Plaintiff-Appellee, the Federal Deposit Insurance Corporation ("FDIC"). Certain lands owned by the FDIC's ancestor-in-title were sold at a tax sale before the FDIC was named receiver. The FDIC wished to set the sales aside. The district court found that the FDIC did not consent to foreclosure of its property as necessitated by 12 USC §1825 (b)(2) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). Therefore, the district court ruled that title to the property in question still rested with the FDIC. For the following reasons, we affirm.

BACKGROUND

Various members of the D'Agostino family ("the D'Agostinos") owned an 33.48 acre undeveloped tract of land ("the Property") in the City of Gonzales, Ascension Parish, Louisiana. On April 18, 1985, the D'Agostinos granted a mortgage over the Property to the American Bank and Trust Company of Baton Rouge ("American Bank"). This mortgage was duly recorded in the official mortgage records of Ascension Parish. The D'Agostinos did not pay their taxes to the City of Gonzales or Ascension Parish. The Plaintiff-Appellant, the Trembling Prairie Land Company ("TPLC"), acquired title to the Property as a result of a series of tax sales conducted by the city and parish which occurred between 1988 and 1990. Interests in the Property were sold at these sales, and TPLC acquired title either by direct purchase at the sales or by purchasing deeds from other individual purchasers.[1] The last of these tax sales occurred on June 8, 1990.

On August 2, 1990, the Commissioner of Financial Institutions for the State of Louisiana declared American Bank to be in an unsafe and unsound condition, and American Bank was closed. The FDIC was appointed to be receiver and liquidator of American Bank, and the FDIC gained possession and title to the assets, business, and property of American Bank, including the original D'Agostino mortgage on the Property. Some of American Bank's assets were transferred to another

---

[1]These other individual purchasers are the "Verspoor, et al" listed in the title of this case.

bank, but the mortgage on the Property remained in the FDIC's hands. By this time, the D'Agostinos did not own the Property, because of the various tax sales.

Whether or not the FDIC had adequate notice of these sales as a matter of law is a major point of dispute in this case, and each side describes the matter of notice differently. TPLC contends that the FDIC received written notice in January of 1991, five months before the end of the redemptive period for the first tax sale of the Property and over two years before the end of the annulment period for the Property. TPLC further asserts that the tax deed for the tax sale was recorded, and that an appraisal of the Property was made on January 16, 1991, which mentioned that the Property had been sold, and recommended that the outstanding taxes be paid and that the Property be redeemed as soon as possible. TPLC claims that this appraisal constituted notice. TPLC also claims that American Bank, the FDIC's ancestor-in-title, had notice of these sales, as evidenced by American Bank's intervention in an expropriation action between the D'Agostinos and United Gas Pipeline Company in 1989. Copies of the 1988 tax sales were included in the exhibits for this expropriation case. Finally, TPLC further argues that American Bank did nothing to pay the taxes on the Property.

The FDIC does not deny the aforementioned matters. However, It does argue that American Bank was never given prior notice of the tax sales by either the Sheriff of Ascension Parish or the City of Gonzales' tax collector.[2] Further, the FDIC denies that the appraisal or the evidence from the expropriation case constituted legal notice.

On April 20, 1994, the United States District Court for the Middle District of Louisiana entered default judgment in favor of the FDIC for full amounts due and owed under the D'Agostinos' mortgage. The debt secured by the mortgage has not been repaid, and the mortgage was reinscribed in 1995. TPLC filed a Petition to Quiet Tax Title on March 10, 1995 in Ascension Parish, after the

---

[2]The Sheriff's practice was to only give actual notice to mortgagees who had registered with his office. The Sheriff instituted this policy because he considered research of the property records to be overly burdensome on his office personnel.

period to redeem the Property expired.  The FDIC intervened, claiming that it did not consent to foreclosure of its interest in the Property, and the action was removed to federal district court.

STANDARD OF REVIEW

We review the grant of summary judgment de novo.  Guillory v. Domtar Industries, Inc., 95 F.3d 1320, 1326 (5th Cir. 1996).  The same summary judgment standard that applies to the district court applies to this Court.  Summary judgment is warranted when the record, as a whole, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); Celotex v. Catrett, 477 U.S. 317, 322 (1986).

DISCUSSION

The FDIC makes the following arguments in favor of our affirming the decision of the district court: (1) that 12 U.S.C. § 1825(b)(2) protects the FDIC's property interest from being extinguished without its consent and (2) that the sales were void ab initio because the FDIC and American Bank did not receive proper notice of the tax sales and, thus their right to due process was violated[3]. "Where a party raises both statutory and constitutional arguments in support of a judgment, ordinarily we first address the statutory argument in order to avoid unnecessary resolution of the constitutional

---

[3] Despite vigorous arguments by all parties regarding the legal sufficiency of the tax sale notice accorded to the FDIC, the district court granted the FDIC's summary judgment motion based on statutory rather than constitutional grounds.  The district court held that:

The court finds that the FDIC does still have a valid interest in this property.  Because of the court's decision and reliance   on section 1825 (B) (2), the court need not and will not get into the issue regarding whether or not there was proper notice give to the FDIC as argued by the parties.  Therefore, the court does not have to discuss the applicability of the Supreme Court's decision in *Mennonite Board Admissions v. Adams,* 103 Supreme Court 791.

4

issue." Schweiker v. Hogan, 457 U.S. 569, 584 (1982); see also also FDIC v. Lee, 130 F.3d 1139, 1142 (5th Cir. 1997). Therefore, we will not reach the constitutional issue if FDIC's statutory argument is correct. See Lee, 130 F.3d at 1142 (citing Dandridge v. Williams, 397 U.S. 471, 475-75 (1970)).

Section 1825(b)(2) states in pertinent part:

No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation.

The FDIC argues that this is a clear case in which their property is being sold under a tax lien. This circuit has clearly stated that, under § 1825, liens against property owned by the FDIC may not be foreclosed upon without the consent of the FDIC. See Lee, 130 F.3d at 1143; Donna Indep. Sch. Dist. v. Balli, 21 F.3d 100 (5th Cir. 1996); Matagorda County v. Russell Law, 19 F.3d 215 (5th Cir. 1994). Ho wever, this case involves a petition to quiet title, not foreclosure. Further, the original sales occurred before the FDIC took over the Property, while the cases were concerned with sales after an FDIC takeover. There is no provision for a petition to quiet title in §1825. Thus, we must determine whether the petition to quiet title is essentially analogous to a foreclosure, and is a "triggering event" under the statute. If it is such a triggering event, then §1825 applies. This is an issue of first impression for this circuit.

In our opinion in Matagorda, we held that "in the absence of Congressional consent the state or county is without authority to enforce the collection of the taxes thus assessed so as to destroy the pre-existing federal lien." Matagorda, 19 F.3d at 219 (citations omitted). Additionally, we have held that "[s]ection 1825 was enacted to protect assets involuntarily acquired by the FDIC from losing value because of its lack of knowledge about local and state tax liens." Id. at 221. The fact that the tax lien antedated the FDIC's interest in the mortgage and the passage of § 1825 made no difference, because the statute's protections were triggered when the taxing units attempted to enforce their liens. Id. at 222.

5

Louisiana law provides that a conventional mortgage is canceled only if the property is not redeemed during the three year redemption period after a tax sale. LA.CONST.ART. VII, § 25; La. Rev. Stat. Ann. §9:2221 et seq. A mortgagee, like the FDIC, succeeds to whatever rights the mortgagor had with respect to a tax sale. Grieshaber v. Cannon, 346 So.2d 166, 167 (La. 1977). At the time that American Bank failed, the redemption period had not expired. The right to redeem the Property was still the property of the FDIC. This property right under § 1825 cannot be foreclosed without the FDIC's consent.

Other jurisdictions have held that FDIC's liens are protected from extinguishment by a tax sale through the operation of § 1825. For instance, the Third Circuit held that preexisting tax lien certificates could not be used to extinguish the FDIC's mortgage. See Simon v. Cebrick, 53 F.3d 17, 19 (3rd Cir. 1995). Simon purchased tax sale certificates on New Jersey real property on which the FDIC as receiver held mortgage liens. Under New Jersey law, Simon's tax liens were superior to the FDIC's interests. The FDIC did not consent to foreclosures and Simon attempted to foreclose on the tax sale certificates. The district court dismissed for failure to state a claim due to the operation of §1825. The court of appeals affirmed holding that the express language of the statute prevented her from foreclosing her tax sale certificates without the FDIC's consent. Id. at 20, 22.

Similarly, in FDIC v. Lowery, 12 F.3d 995, 996 (10th Cir. 1993), the Tenth Circuit rejected the argument that § 1825 had an implied exception which permitted local taxing authorities to foreclose on tax liens on certain real property which attached prior to the FDIC's acquisition of that property. The court based this rejection on its determination that the language of the statute was unequivocal and was not subject to any exceptions. Id. The court additionally explained that "[i]f no lien may attach during the FDIC's ownership, the prohibition against foreclosure or sale of the FDIC's property without its consent can only refer to enforcement of liens which attached to the property before the FDIC came into title." Id. at 996-97 (footnote omitted). See also Beal Bank, SSB v. Nassan County, 973 F.Supp. 130 (E.D. N.Y. 1997)

TPLC contends that this authority is inapposite because under Louisiana law the tax deed is issued prior to the end of the redemption period. However, we agree with the FDIC that this is a distinction without a difference. TPLC is still foreclosing on the property interests of the FDIC as a result of unpaid property taxes. Thus, the Louisiana tax sales are the functional equivalent of the foreclosure procedures barred by this Court in Donna and Matagorda, and by the Third and Tenth Circuits in Simon and Lowery.[4]

FIRREA was passed to address the massive problems in this country's banking and S&L industries in the late 1980s. The shockwaves from this financial crisis have only recently begun to wane. Thus, in 1989, FIRREA was drafted to help create stability and economic recovery in the financial industry.[5] See Pub.L. No. 101-73 § 101, 103 Stat 183, 186. While the term "quiet title" is not specifically mentioned in the § 1825, the end result is functionally the same as that of the actions that are specifically listed in the statute: the FDIC loses the Property. Thus, the language in §1825 must be construed to cover petitions to quiet title as triggering events because "12 U.S.C. § 1825(b)(2) represents the express will of Congress that the FDIC must consent to any deprivation of property initiated by a state." Lee, 130 F.3d at 1143.

---

[4]Our conclusion on this point is analogous to our ruling in United States v. FDIC, 881 F.2d 207, 209-210 (5th Cir. 1989) that a statute prohibiting attachments, injunctions and executions on the property of a receiver of a national bank also barred the filing of an abstract of judgement under Texas law as it was the functional equivalent of an attachment.

[5]TPLC points out that cases such as O'Melveny & Myers v. FDIC, 512 U.S. 79 (1994) state that while uniformity and efficiency are valid goals for the FDIC, state laws cannot be displaced without good policy reasons. However we believe that the necessity of recouping economic stability in the financial industry is a valid public policy reason to override the Louisiana statutes of limitation in this matter. Also, the claim that without a statute of limitations §1825 will interfere with the Louisiana Public Records Doctrine is without merit. This doctrine states that any writing or agreement not recorded does not bind third parties. La.R.S. 9:2721A. The mortgage in this case is recorded, in the name of American Bank. Anyone looking for information will know that there is an outstanding mortgage, and if they wish to know more than that, can easily check to see American bank's present status, and discover that the FDIC is its successor-in-interest. Such third parties are able to ask the FDIC for consent to sale or foreclosure of its interests.

## CONCLUSION

In deference to the will of Congress, we hold that the tax sale at issue was conducted without the consent of the FDIC. Accordingly, the tax sale violated 12 U.S.C. § 1825(b)(2) and thus is null and void. Summary judgment in favor of FDIC is AFFIRMED.