IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 97-10708

---

FIRST STATE BANK-KEENE,

Plaintiff-Appellee,

versus

METROPLEX PETROLEUM INCORPORATED, ET AL.,

Defendants,

JERRIE M. SMITH; MICHAEL HARRISON,

Defendants-Appellants.

---

Appeal from the United States District Court for the
Northern District of Texas

---

September 16, 1998

Before GARWOOD, DAVIS and EMILIO M. GARZA, Circuit Judges.

GARWOOD, Circuit Judge:

Defendants-appellants Jerrie M. Smith (Smith) and Michael Harrison (Harrison) (appellants) appeal the district court's judgment declaring void their interest and claim to a parcel of land that they purchased at a tax sale, which sale the district court held to be void in its entirety. We reverse.

## Facts and Proceedings Below

On March 24, 1988, Metroplex Petroleum, Inc. (Metroplex), in

Richardson, Texas, executed and delivered to First National Bank of Richardson (FNB) a promissory note in the principal sum of $266,400 (the Note), and a deed of trust (the Deed of Trust), on a tract of real property located in Grand Prairie, Texas (the Property), to secure the Note. Because of default in payment, the Note was duly accelerated and full payment was demanded by FNB on June 23, 1989. Payment was not made.

On June 30, 1989, FNB was declared insolvent and the Federal Deposit Insurance Corporation (FDIC) was appointed as Receiver for the failed institution. The Note and Deed of Trust passed to the FDIC at that time.

In 1991, the City of Grand Prairie and the Grand Prairie Independent School District brought suit in a Texas court (the "tax suit") against Metroplex for delinquent ad valorem taxes and sought to foreclose their statutory tax liens against the Property. Dallas County intervened as a plaintiff. FNB, the Internal Revenue Service (IRS), and the State of Texas were named as *in rem* defendants. The FDIC was not named as a party in any capacity. Citation on "Comerica, Formerly First National Bank of Richardson" was served on Comerica Bank-Texas (Comerica) due, apparently, to the impression, which was mistaken, that Comerica had succeeded to certain of the rights and assets of FNB, including the Note and Deed of Trust. The FDIC, which was the actual successor-in-interest to FNB, was not joined as a party to the tax suit and did

2

not consent to the foreclosure or subsequent sale of the Property.

On November 8, 1991, judgment in the tax suit was rendered in favor of the plaintiffs ("the Taxing Units").[1] Judgment was rendered against defendant Metroplex in the amount of $8,797 in delinquent taxes, penalties, and interest for the years 1989 to 1991.[2] The judgment foreclosed the tax liens and ordered sale of the property by the Dallas County Sheriff.

On March 5, 1992, Smith purchased the property for slightly more than $10,000, a sum in excess of the judgment amount, at a tax sale conducted by the sheriff (hereinafter the "tax sale"). Appellants have been in possession of the Property since that time.

On March 22, 1996, the FDIC filed suit in the court below against appellants, Metroplex, and the Taxing Units seeking: 1) a declaration that the tax suit judgment and sheriff's sale were void in their entirety; 2) a declaration that appellants' claimed ownership of the property by virtue of their purchase at the tax sale was void and extinguished; 3) a judgment against Metroplex for the unpaid balance of the Note; and 4) a judgment foreclosing the Deed of Trust lien against the Property. Metroplex, though served, did not appear or answer. Appellants answered, asserting the

---

[1] The plaintiffs (Taxing Units) were the City of Grand Prairie, Grand Prairie Independent School District, and Dallas County.

[2] As to the *in rem* defendants, the judgment recited that Comerica filed an answer, but did not appear, and disclaimed any interest in the property; Metroplex did not answer or appear; the IRS did not answer or appear; and the State of Texas answered, disclaiming any interest in the property.

3

affirmative defenses of the statute of limitations and adverse possession under color of title. While the suit was pending in the district court, the FDIC transferred the Note and Deed of Trust to First State Bank--Keene ("FSB"), which was substituted as plaintiff in the district court.

The case was tried to the bench on stipulated facts. The district court found that FNB and the FDIC had not been joined as parties to the tax suit. The court held that the FDIC was a necessary party and that failure to join the FDIC rendered the tax suit and subsequent tax sale entirely void. The court further held that appellants had not gained title by adverse possession because they did not claim under color of title. Additionally, although the court found that the suit had not been filed by the FDIC within the applicable limitations period, it held that appellants lacked standing to assert the limitations defense. Accordingly, judgment was rendered in favor of FSB. The judgment, *inter alia*, declared the sheriff's sale null and void, ordered the Taxing Units to pay Smith the amount they had received from him for the Property at the tax sale, and ordered foreclosure and sale of the Property in satisfaction of the judgment.[3]

In the proceeding before the district court, the Taxing Units

_____

[3] The district court's judgment ordered that Metroplex pay FSB $491,769.96; that the Taxing Units reimburse Smith the amount they received from him for the Property at the tax sale; that FSB have foreclosure on its lien; and that the Property be sold at a sheriff's sale in satisfaction of the judgment.

4

did not challenge the court's holding that the tax sale was void, and they have not appealed.

## Discussion

I. Limitations

Appellants' principal defense to FSB's attempted foreclosure was that the note was barred by limitations. It is clear that *if* the note was barred by limitations and *if* appellants had standing to assert limitations, that then FSB could not enforce its lien against the Property. The district court correctly ruled that the applicable limitations period was that provided by 12 U.S.C. § 1821(d)(14)(A)(i), namely six years, or the applicable period under state law, whichever is longer. The six-year period begins to run on the date the cause of action accrues or the date the FDIC is appointed receiver, whichever is later. 12 U.S.C. § 1821(d)(14)(B). *See Davidson v. FDIC*, 44 F.3d 246 (5th Cir. 1995). Here the stipulated facts reflect that the cause of action accrued not later than June 24, 1989, and the FDIC was appointed receiver June 30, 1989, so the six-year period had run by July 1, 1995, but the FDIC's suit was not filed until March 1996, more than eight months after limitations had run. FSB does not challenge the district court's determination that the applicable limitations period is six years, and does not assert that any longer period is provided under state law; nor does FSB claim that the running of limitations was interrupted or tolled, and the district court did

5

not so find (nor do we see any basis for such a finding). Consequently, the debt was plainly barred by limitations. It is settled under Texas law, which is controlling for these purposes here, that if the debt is barred by limitations, the deed of trust lien is likewise invalid, as the lien is a mere incident of the debt. *Davidson* at 252-253. The question then becomes whether appellants had standing to plead limitations. The district court ruled that appellants lacked the required standing. The Texas rule is correctly stated in 50 *Tex. Jur. 3d, Limitation of Actions*, § 18 (1986), as follows:

> "The defense of limitations is generally a personal privilege of the debtor. The right to invoke the bar of limitations against a remedy passes, however, to one who lawfully acquires property or any right on which the remedy operates, such as a lienholder or subsequent purchaser." (Footnotes omitted).

*See also Miller, Hiersche, Martens & Hayward P.C. v. Bent Tree National Bank*, 894 S.W.2d 828, 829 (Tex. App.-Dallas, 1995); *Skaer v. First National Bank of Paris*, 293 S.W. 228, 229 (Tex. Civ. App.-Texarkana 1927, writ ref'd); *Levy v. Williams*, 49 S.W. 930, 931 (Tex. Civ. App., 1899). This is also the general rule. *See Boys Town, USA, Inc. v. World Church*, 349 F.2d 576, 579 (9th Cir. 1965), *cert. denied*, 86 S.Ct. 894 (1966); 51 *Am. Jur. 2d, Limitation of Actions*, § 392 (1970).[4]

---

[4] "Since the statute of limitations is a plea personal to the debtor, it follows that the statute of limitations may not be availed of by one who is a stranger to the debtor,

The district court held that appellants lacked standing to plead limitations because they had no interest in the Property, and were not in privity with Metroplex, *because* the tax suit judgment and the tax sale were wholly void and transferred no interest whatever in the Property to Smith. That then is the central issue in the case.

II.  Effect of Tax Sale

FSB, as the FDIC's successor-in-interest, contends that the tax suit judgment was fatally defective because the FDIC was not made a party to the tax suit. Consequently, they argue, the subsequent tax sale was entirely void and thus had no effect whatsoever as to any of the various interests in the Property. As a result, FSB asserts that the district court was correct in holding that appellants lacked standing to assert a statute of limitations defense. Appellants argue to the contrary that, despite the omission of the FDIC as a party defendant, the tax suit and subsequent sale were valid and binding as to the parties which were properly before the court in that suit. Accordingly, they argue that they had standing as successors-in-interest to Metroplex

standing in no relation of privity of estate with him. On the other hand, where there is a privity between a person who could, if sued, plead the statute and the party offering to plead it, the latter may plead it to save his property. Such is the case with heirs, mortgagees, cotenants joining in a mortgage, and transferees of mortgaged property." *Id*. (footnotes omitted).

7

to assert that the limitations period had run on the note and, consequently, that FSB could no longer exercise its power of sale under the deed of trust.

On appeal, FSB and appellants rely on both Texas and federal law as supporting their respective positions, proffering alternative arguments based on each.

As noted, the central issue on this appeal is whether the district court erred in holding that the appellants lacked standing to assert a limitations defense against FSB. Resolution of this question, however, requires determination of whether the tax suit judgment and the subsequent tax sale were *entirely* void, because appellants' principal claim to standing to assert limitations is based on their having obtained some interest in the Property at the tax sale, thereby placing them in privity with Metroplex.

A. State Law Arguments

Appellants claim that under Texas law "although a lienholder who is not made a party is not bound by the judgment rendered, the judgment is valid and operative as against those who were actually made parties." Thus appellants argue that the tax suit judgment was valid as to Metroplex, the owner of the Property, and the tax sale conveyed such interest as Metroplex possessed. Appellants also assert that because the FDIC was not made a party to the tax suit, it is not bound by the judgment and, consequently, no action taken pursuant to the tax suit judgment had the effect of

8

disturbing the FDIC's lien interest. Thus, appellants claim that the tax suit judgment was dispositive of Metroplex's interest in the Property, which was conveyed to them pursuant to the tax sale, but that because the FDIC was not party to the tax suit, the judgment did not affect its lien interest, and, accordingly, that they took the Property subject to the FDIC's lien, just as if Metroplex had conveyed it to them subject to the lien.

FSB disputes appellants' interpretation of the applicable Texas law, claiming that the FDIC was a "necessary party" to the tax suit and, therefore, that failure to join the FDIC renders the judgment entered pursuant to the tax suit void in its entirety. According to FSB, the Texas rule is that "as between the tax sale purchaser and the interested person who was not made a party to the tax suit, the tax sale purchaser's interest is void." Accordingly, FSB contends that appellants' interest in the Property is necessarily void.

B.  Federal Law Arguments

Turning to the parties' federal law arguments, both appellants and FSB cite 12 U.S.C. § 1825(b)(2) as supporting their respective positions. Section 1825(b)(2), enacted as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 107-173, 103 Stat. 183 (1989), provides that "[n]o property of the [FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FDIC], nor shall any involuntary lien attach to the property of

9

the [FDIC]."

Appellants argue, *inter alia*, that section 1825(b)(2) relates only to the FDIC's lien, not to Metroplex's "equity."  Appellants also argue that, by its express terms, section 1825(b)(2) prevented foreclosure of the FDIC's lien interest irrespective of whether the FDIC was made a party to the tax suit.  Accordingly, they argue, the FDIC could not have been a "necessary party" to the tax suit because, pursuant to the prohibition of section 1825(b)(2), the state court lacked authority to extinguish the FDIC's lien.

FSB contests appellants' interpretation and application of section 1825(b)(2).  It also argues that the tax suit may well have been invalid pursuant to section 1825(b)(2) because the FDIC did not consent to the tax sale, which purported to vest "good and perfect title" in the purchaser, extinguishing all prior lien interests pursuant to the authority of Texas state law.  *See* Tex. Tax Code Ann. § 34.01(d) (Vernon 1992).

C.  Analysis of Texas Law

With respect to the Texas law arguments, both the case law and authorities cited favor the position of the appellants.  As FSB concedes, some of the relevant cases are difficult to reconcile, but the substantial majority of the cases hold that failure to join a lienholder in a tax foreclosure suit does not render a subsequent judgment void as to the parties who were joined in the suit.  As stated in 69 *Tex. Jur. 3d, Taxation*, § 461 (1989), a tax deed

10

"vests good and perfect title" in the purchaser "to [such] interest owned by the defendant," but is "subject to the rights of any person who had some interest in the property and therefore should have been joined as a party in the suit but was not so joined."

The majority of relevant cases state the same rule. For example, in *Tabasco Consol. Indep. School Dist. v. Reyna's Estate*, 93 S.W.2d 796 (Tex. Civ. App.--San Antonio 1936), the court held that although both Texas statutory and decisional authority

> "provides and contemplates that all proper persons, including lienholders, shall be joined in suits for the collection of taxes against property in this state. It is likewise true that the failure on the part of the tax collecting authority to join all parties interested in the property in the suit shall be no defense or constitute any reason to delay judgment or action against those owners who may be properly before the court." *Id.* at 798.

This rule was explained by the fact that "[t]hose owners who are not parties defendant are not concluded, and their rights are not injured by the judgment entered." *Id.*

This appears to be essentially the same rule as is stated in the cases relied on by FSB as well. For example, in *Bussan v. Donald*, 244 S.W.2d 271 (Tex. Civ. App.--Fort Worth 1951, writ ref'd n.r.e.), one of three cases relied upon by FSB, the court explained that,

> "strangers to a judgment, that is, [persons] who are not parties or privy to a proceeding, may, when their interests are adversely affected by the judgment, impeach it whenever it is attempted to be enforced against them." 244 S.W.2d at 273 (citation omitted).

11

As is implied by this passage, the judgment is not wholly void, but simply provides a basis upon which a lienholder may collaterally attack the judgment if it is sought to be enforced against him. As further stated in *Bussan*, "the prior lien holder . . . , not being a party to [the foreclosure] suit, was not bound thereby," and "could attack it collaterally when appellants asserted it against his title." 244 S.W.2d at 274. All of the cases either called to our attention by the parties or revealed by our review of Texas case law indicate that the cases are in substantial accord and support the rule as stated by the appellants.[5]

In sum, "[a] judgment in a tax suit is not void because all parties who own an interest in the property are not made parties. Such judgment foreclosing the tax lien is good as against the parties in interest joined in the suit, and parties not joined are not bound by any such judgment." *Loper v. Meshaw Lumber Co.*, 104 S.W.2d 597, 599-600 (Tex. Civ. App.--Eastland 1937, writ dism'd).

---

[5]     *See Whitehead v. Garbury Indep. School Dist.*, 45 S.W.2d 421 (Tex. Civ. App.--Fort Worth 1931), in which the court stated that lienholders are proper parties, but, "that the failure to implead one or more of the interested parties did not deprive the trial court of power to render a valid judgment as to those actually impleaded." *Id.* at 423 (citation omitted). *Cf. Coakley v. Reising*, 436 S.W.2d 315, 318 (Tex. 1968) ("[A] judgment by a taxing agency is not binding upon a person who is not a party to the suit, when his ownership is evidenced by an unrecorded document, if the taxing authority has actual or constructive notice of his title or ownership."). Thus, while the cases state that a lienholder should, or sometimes "must," be joined, the cases uniformly hold that failure to do so does not wholly invalidate the judgment, but rather renders it "non-binding" upon the omitted lienholder.

12

Accordingly, we hold that the 1991 tax suit was not wholly void, but because the FDIC was not made a party to the suit, its lien interest was not disposed of and appellants took the Property subject to the FDIC's lien, just as they would have had Metroplex convey it to them subject to the FDIC's lien but without the FDIC's knowledge or consent.

D.   Analysis of Federal Law

The fundamental issue implicated by the federal law arguments on appeal involves whether, and to what extent, section 1825(b)(2) is incompatible with the Texas state laws governing foreclosure of tax liens against real property and the subsequent conveyance of that property at a tax sale.

In one of our most recent pronouncements on this question, *FDIC v. Lee*, 130 F.3d 1139 (5th Cir. 1997), we held that a tax sale under Louisiana law violated section 1825(b)(2).  In *Lee*, the FDIC, in its capacity as receiver for a failed bank, succeeded to a mortgage on a parcel of land located in Jefferson Parish, Louisiana.  The owner of the land failed to pay the taxes due, resulting in the transfer of the property at a tax sale.  Because the FDIC's lien interest in the land was not properly recorded, and because it had failed to request a notice of tax delinquency pursuant to Louisiana statute, the FDIC was not informed of the sale of the property.  Soon after the sale, however, the tax sale purchaser contacted the FDIC to inquire whether it intended to file

13

for redemption of the property.  The FDIC took no action for approximately three years, but eventually filed a writ of mandamus in state court seeking to compel the issuance of a redemption deed. *Id.* at 1140.  The state court denied and dismissed the writ because the FDIC refused to reimburse the tax sale purchaser for repairs and maintenance of the property as was required under the Louisiana statute governing redemption.  *Id.*  The FDIC subsequently filed suit in federal court seeking to have the tax sale declared void, arguing that the sale had violated its constitutional due process right to notice.  *Id.*  We based our holding on the ground that the tax sale violated section 1825(b)(2) because the FDIC had not consented to the sale.  *Id.* at 1143.  We reasoned that the provision's prohibition on "foreclosures" applied to tax sales as conducted under Louisiana state law, and stated that "[t]he controlling principle of this case is that 12 U.S.C. § 1825(b)(2) represents the express will of Congress that the FDIC must consent to any deprivation of property initiated by the state."  *Id*. at 1143.  We held "that the tax sale was conducted without the consent of the FDIC" and, accordingly, "violated 12 U.S.C. § 1825(b)(2) and thus is null and void."  *Id.*

In *Trembling Prairie Land Co. v. Verspoor*, 145 F.3d 686 (5th Cir. 1998), we applied the reasoning of *Lee* to a case in which the FDIC sought to redeem property subject to an FDIC lien that had been sold at a tax sale without its consent.  We held that the

14

FDIC's right of redemption constituted "property" within section 1825(b)(2). *Id.* at 690. Concluding that tax sales under Louisiana law were functionally equivalent to the Texas foreclosure procedures, we held the tax sale "null and void" because it had been conducted in violation of section 1825(b)(2). *Id.* at 690-91. In summarizing the rationale of our holding, we quoted our previous statement in *Lee* that section 1825(b)(2) "represents the express will of Congress that the FDIC must consent to any deprivation of property initiated by a state." *Id.* at 691 (citation omitted).

In both *Lee* and *Verspoor*, we summarized section 1825(b)(2) as requiring that the FDIC must consent to any "deprivation" of property initiated by the state. This simple articulation of the undergirding principle of section 1825(b) accurately represents the analytical thread that runs through the line of cases interpreting this provision. Obviously, the FDIC cannot be "deprived" of any property interest it never owned. Here, the FDIC never had more than a lien; it never had the right to prevent transfer of the Property (or an interest therein) subject to its lien; and it never had the right to prevent Metroplex, or any party holding an interest in the Property under Metroplex, from pleading the statute of limitations once the statute had run.

For example, in *Irving Indep. School Dist. v. Packard Properties*, 970 F.2d 58, 62 (5th Cir. 1992), we rejected an argument by the FDIC that certain preexisting liens securing

15

previously-assessed penalties had "the same effect as the imposition of a direct liability" and therefore violated 12 U.S.C. § 1825(b)(2) and (3). We concluded that allowing enforcement of these preexisting liens subsequent to sale of the assets by the FDIC did not constitute a deprivation of the FDIC's "property." We reasoned that because the liens had been in place when the FDIC acquired the assets, the "liens have not caused a reduction in the value of the receivership's assets," explaining that the "assets have the same value today that they had when the FDIC obtained them." *Id.* Because of this, we held that section 1825(b)(2) did not apply and that the preexisting liens could be enforced upon the FDIC's sale or disposal of the encumbered assets. *Id.* Although we did not expressly state our conclusions in those terms, the key to our holding was that allowing future enforcement of the liens did not constitute a deprivation of the FDIC's property.

Because the term "property" has come to be somewhat broadly construed in the context of section 1825(b)(2), there exists a vast number of potential interests sufficient to constitute "property" under that provision. This makes the requirement that there be an actual "deprivation" crucial in analyzing whether a particular action taken under state law violates section 1825(b)(2). The reasoning of *Irving* illustrates our point as well as the distinction we seek to make. Absent some actual devaluation of, or loss of rights in, FDIC "property," there is no "deprivation of

16

property" and section 1825(b)(2) is not violated under *Lee*.   In *Lee*, the state court held that under Louisiana law, redemption of the property by the FDIC would only be allowed if the FDIC reimbursed the tax sale purchaser for repairs and maintenance of the property.  130 F.3d at 1140.  Thus, the application of state law would have subjected the FDIC to payment of an additional, nonconsensual fee before it could exercise its rights under the mortgage as they had existed prior to the tax sale.  In other words, the "deprivation" in *Lee* appears to have been the requirement that the FDIC pay to redeem the property, rather than the mere transfer of title pursuant to the tax sale.

Similarly, in *Verspoor* the FDIC succeeded to a right of redemption, which a tax sale purchaser sought to extinguish by means of a suit to quiet title.  145 F.3d at 690.  We held that the "property" involved in *Verspoor* was the right to redeem the land that had been sold at the tax sale.  *Id.*  The suit to quiet title sought, by operation of state law, to extinguish this right, thereby depriving the FDIC of "property" without its consent.  As in *Lee*, we assume that the FDIC had no particular interest in who held legal title to the property in question as long as the FDIC's equitable rights in the property were not prejudiced and could be exercised at the discretion of the FDIC without additional cost.

In addition, we note that in the two cases in which we have considered tax sales under Texas law, *Matagorda County v. Russell*

*Law*, 19 F.3d 215 (5th Cir. 1994), and *Donna Indep. School Dist. v. Balli*, 21 F.3d 100 (5th Cir. 1994), we held that the tax liens *could* be foreclosed as long as the FDIC's interests were preserved. In *Matagorda*, we stated that, although this was a permissible solution, it was not a realistic one under the circumstances of that case. 19 F.3d at 225 n.11. We also acknowledged that the FDIC itself had endorsed this general position. *Id.* at 223 n.7. In *Balli*, we affirmed the district court's judgment, which held that the taxing units were permitted to foreclose their liens, but "decreed that foreclosure on the tax liens would be subject to the FDIC's deed of trust liens." *Id.* at 101.

In the case at bar, the FDIC's "property" in question consists of the FDIC's mortgage on the Property. Unlike the actions taken pursuant to state law in *Lee* and *Verspoor*, the foreclosure and tax sale under Texas law did not extinguish the FDIC's lien because the FDIC was not joined in the tax suit. The FDIC's lien was not devalued, extinguished, or disturbed in any manner. The appellants took the Property subject to the FDIC lien, and the FDIC's ability to enforce its rights under the lien were not prejudiced thereby. It had all the same rights following the judgment in the tax suit and the consequent tax sale as it did before the tax suit was filed. The FDIC could then have exercised its power of sale under the deed of trust against appellants just as easily as it could have prior to the tax suit judgment and tax sale. The FDIC was in

18

no different position following the tax suit and tax sale than it would have been had there been no such tax suit and tax sale and Metroplex had in March 1992 conveyed the Property (without the knowledge or consent of the FDIC) to Smith subject to the FDIC's lien. Consequently, we hold that the tax sale did not constitute a deprivation of the FDIC's property, and thus did not violate section 1825(b)(2). Accordingly, we conclude that the tax sale was not "null and void" *in its entirety* and did effectively convey such interest in the Property as was held by Metroplex, the mortgagor-owner, to the appellants, subject to the FDIC's lien.

### Conclusion

Having concluded that the tax sale which transferred title from Metroplex to the appellants was not void in its entirety, either under Texas state law or pursuant to the restrictions of 12 U.S.C. § 1825(b)(2), we hold that the district court erred in holding that appellants lacked standing to assert that the six-year statute of limitations provided by FIRREA had run. As the stipulated facts clearly demonstrate that the six-year limitations period had run months prior to the filing of this suit, the FDIC's lien against the Property likewise had become unenforceable and was barred when the suit was filed. Accordingly, the judgment of the district court is reversed and the cause is remanded for entry of judgment consistent with this opinion.

19

REVERSED and REMANDED