# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 22, 2015

No. 14-50397

Lyle W. Cayce
Clerk

CAP HOLDINGS, INCORPORATED, doing business as Recovery Management International,

Plaintiff - Appellant

v.

KATHLEEN A. LORDEN; JUSTIN PRUITT; GARY E. HAISLER; URIKA R. MENDOZA; JUDITH C. RUSHING; JOYCE M. STEPHAN,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, WIENER, and CLEMENT, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In 1990, property encumbered by a deed of trust held by the Resolution Trust Company ("RTC") was foreclosed upon and sold to a third party in a tax sale, purportedly extinguishing the RTC's lien. Two years ago, Plaintiff CAP Holdings, Inc.—the alleged current holder of the deed of trust—sued the current owners of the property seeking a declaration that the foreclosure and resulting sale were void for violating 12 U.S.C. § 1825(b)(2), which prohibits "property of the" RTC from being foreclosed upon or sold "without the consent

No. 14-50397

of" the RTC.[1] The district court dismissed CAP Holdings's complaint on the ground that the six-year limitations period had expired. Because our precedent dictates that, if the sale was conducted in violation of § 1825(b)(2), then it indeed is entirely void, and because the district court failed to consider whether the sale's being void would render the defendants without standing under Texas law to assert a limitations defense, we VACATE the district court's judgment and REMAND this case for further proceedings.

I.

In 1985, an entity called the Jefferson Group purchased a 94-acre tract of land in Georgetown, Texas ("the Property"), using a loan from Lincoln Federal Savings & Loan. In exchange for the loan, the Jefferson Group executed a promissory note in favor of Lincoln in the amount of $5.5 million, secured by a deed of trust on the Property. In 1987, the loan matured, apparently unpaid. In mid-1990, Lincoln failed and went into receivership, with the RTC as its receiver. Soon after, the RTC successfully sued the Jefferson Group over the unpaid note in a Florida court, obtaining a money judgment ("the Florida Judgment.").

In addition to not paying the note, the Jefferson Group, it seems, also did not pay its property taxes. Accordingly, in October 1990, the Georgetown Independent School District ("the GISD") filed a tax-foreclosure suit against the Property, naming as defendants, among others, the Jefferson Group and the RTC. The RTC answered and appeared at trial in the suit but, apparently,

---

[1] The current version of § 1825(b)(2) refers only to the RTC's successor, the Federal Deposit Insurance Corporation ("the FDIC"). *See* § 1825(b)(2) ("No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation . . . ."); 12 U.S.C. § 1811(a) (defining "the Corporation" as the FDIC). No party disputes, however, that while the RTC existed, § 1825(b)(2) applied equally to it. When discussing § 1825(b)(2) and our cases interpreting it, then, this opinion uses the terms "FDIC" and "RTC" interchangeably.

did not argue that under § 1825(b)(2) its consent was required for the GISD to foreclose upon its lien. After obtaining a judgment of foreclosure against all defendants, the GISD purchased the Property. Eventually, subsequent purchasers developed and subdivided the Property into a residential subdivision with approximately 400 houses, including those owned by the defendants.

Meanwhile, in 1995, the RTC was dissolved and the FDIC was substituted as its "statutory successor." *See, e.g., FDIC v. Barton*, 233 F.3d 859, 862 (5th Cir. 2000). Accordingly, the FDIC assumed ownership of the Jefferson Group loan.

In 1996, the FDIC assigned some of its assets to an entity called the Reliant Group, L.P. Among those assets was an asset referred to in the assignment documentation as "Jefferson Group." According to CAP Holdings, the "Jefferson Group" asset included all of the FDIC's interest in the Jefferson Group loan—that is, both the Florida Judgment and the deed of trust.[2] Following a series of subsequent assignments, CAP Holdings acquired the

---

[2] The Lorden Defendants (*see infra* p. 4) argue that CAP Holdings's allegation that the FDIC's assignment included the deed of trust as well as the Florida Judgment is implausible. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). This argument is based on the assignment documentation attached to CAP Holdings's complaint, which at one point refers to the "Jefferson Group" asset as, simply, a "Judgment." CAP Holdings explains, however, that the FDIC designates all of the assets it sells as "Judgments," "Deficiencies," or "Charge-offs," depending on the stage of collection of the loans constituting the assets. Thus, according to CAP Holdings, the assignment documentation refers to the "Jefferson Group" asset as a "Judgment" because the FDIC had obtained a judgment (the Florida Judgment) against the debtor, not because the asset is *only* a judgment. Given this explanation, there is at least a reasonable inference that the "Jefferson Group" asset included the deed of trust as well as the Florida Judgment. *See, e.g., Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 210 (5th Cir. 2004) ("On a motion to dismiss, this Court must construe the factual allegations in a complaint, and all reasonable inferences therefrom, in the light most favorable to the plaintiffs."); *see also Quantum Varde Asset Fund LLC v. Zuffle*, 73 F. App'x 672, 673, 675–76 (5th Cir. 2003) (rejecting an argument similar to the defendants' in a case involving an FDIC assignment).

No. 14-50397

Jefferson Group asset. After doing so, CAP Holdings filed a notice of recording in the public records of Williamson County, Texas, claiming a deed-of-trust lien on the Property.

In March 2013, CAP Holdings filed a declaratory-judgment action against the defendants, seeking declarations that the 1990 judgment of foreclosure was void; that, therefore, the deeds held by the defendants were void; and that it had a valid lien on the portion of the Property claimed by the defendants. CAP Holdings's claim was based on § 1825(b)(2), which, as we have noted, prohibits the foreclosure or sale of the RTC's property without the RTC's consent; the tax sale, it was alleged, was conducted in violation of § 1825(b)(2) because the RTC had not expressly consented to it. And under our precedent, in cases like *FDIC v. Lee*, 130 F.3d 1139 (5th Cir. 1997), *Trembling Prairie Land Co. v. Verspoor*, 145 F.3d 686 (5th Cir. 1998), and *First State Bank-Keene v. Metroplex Petroleum*, 155 F.3d 732 (5th Cir. 1997), CAP Holdings asserted, a tax sale conducted in violation of § 1825(b)(2) is "null and void *ab initio*."

Several of the defendants—Lorden, Haisler, Mendoza, Rushing, and Stephan ("the Lorden Defendants")—moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They argued, primarily, that regardless of the foreclosure's validity, the foreclosure cannot now be challenged because of the statute of limitations bar. The other defendant—Pruitt—moved for summary judgment asserting the same argument. In response, CAP Holdings contended that, because the tax sale was entirely void, the defendants were not in "privity" with the Jefferson Group and thus lacked standing under Texas law to invoke the statute of limitations.

The district court granted both of the defendants' motions and dismissed the complaint. In so doing, the district court did not consider the questions posed by the parties' arguments—whether, under our precedent, a tax sale

4

No. 14-50397

conducted in violation of § 1825(b)(2) is void; and if so, whether its being void renders the purchaser without standing to invoke the statute of limitations. Instead, without mentioning *Lee*, *Trembling Prairie*, or the relevant aspects of *First State Bank-Keene*, the district court summarily rejected CAP Holdings's voidness argument as being one "of the boot-strap variety." *CAP Holdings, Inc. v. Haisler*, CIVIL NO. 1:13-CV-204-LY, 2014 U.S. Dist. LEXIS 45583, at *6–7 (W.D. Tex. Mar. 31, 2014).[3] It then proceeded to the merits of the defendants' limitations defense. Under federal law, the district court held, the limitations period was six years from the date the cause of action accrued or the date the RTC was appointed as receiver, whichever is later. *Id.* at *9 (citing 12 U.S.C. § 1821(d)(14)(B)). Accordingly, the limitations period began on the date the RTC was appointed as receiver in mid-1990, and it expired in mid-1996. *Id.* Thus, the district court concluded, CAP Holdings's suit was time-barred. *Id.* at *12–13.

## II.

The standard of review for all issues in this appeal is de novo. *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 721 (5th Cir. 2013) (12(b)(6)); *Zephyr Aviation, L.L.C. v. Dailey*, 247 F.3d 565, 570 (5th Cir. 2001) (12(b)(1));

---

[3] The district court seems to have misconstrued CAP Holdings's standing argument as an argument that the defendants lacked Article III standing to defend this lawsuit. *See CAP Holdings*, 2014 U.S. Dist. LEXIS 45583, at *6–7 ("Article III of the United States Constitution requires a case or controversy. Having created the controversy by claiming a lien on property owned by Defendants, CAP Holdings cannot now say Defendants may not defend themselves against CAP Holdings's claims by asserting that those claims are time-barred."). Although CAP Holdings indeed refers to the defendants' "standing" to invoke the statute of limitations, it clearly is disputing only whether under Texas law they are proper parties to assert a limitations defense, not whether they have "standing" in the sense that their interest in this lawsuit is sufficient to create a justiciable "case or controversy" under Article III of the Constitution. Indeed, an argument that the *defendants* lacked Article III standing would be nonsensical; the Article III standing inquiry focuses only on "the party invoking the Court's authority," *Camreta v. Greene*, 131 S. Ct. 2020, 2028 (2011)—and here, that is the *plaintiff*, CAP Holdings.

No. 14-50397

*Carpenters Dist. Council v. Dillard Dep't Stores*, 15 F.3d 1275, 1281 (5th Cir. 1994) (summary judgment).

## III.

### A.

On appeal, CAP Holdings does not dispute the district court's calculation of the limitations period. Instead, its sole assignment of error is that the district court should have not ever reached the statute-of-limitations question because the defendants lack standing to even raise a limitations defense. This is so, in CAP Holdings's view, because (1) under Texas law, the statute of limitations may be invoked by a party other than the original debtor only if the party is in "privity" with the debtor; (2) the defendants here would be in privity with the debtor, the Jefferson Group, only if they could trace their title in the Property back to the Jefferson Group; (3) the tax sale through which the defendants' predecessor-in-interest, the GISD, obtained title to the Property was conducted without the RTC's consent and thus in violation of § 1825(b)(2); and (4) the defendants therefore cannot trace their title back to the Jefferson Group because the tax sale, having been conducted in violation of § 1825(b)(2), was without legal effect—"null and void *ab initio*."

The defendants do not defend the district court's summary rejection of CAP Holdings's argument as being "of the boot-strap variety." *See CAP Holdings*, 2014 U.S. Dist. LEXIS 45583, at *6–7. Nor do they dispute most of the premises underlying CAP Holdings's argument—that is, they do not dispute that, to assert a limitations defense, they must be in privity with the Jefferson Group; nor do they argue that they can show privity other than by tracing their title back to the Jefferson Group; nor do they argue that, by appearing as a party in the foreclosure proceedings, the RTC impliedly consented to the tax sale such that § 1825(b)(2) was not violated. Indeed, in their arguments before this court, the defendants have confined their

disagreement with CAP Holdings to a single point: according to the defendants, CAP Holdings is wrong to assert that a tax sale conducted in violation of § 1825(b)(2) is void *in its entirety*; instead, the defendants say, such a sale is void only insofar as it affected the FDIC's lien on the Property.  Thus, the defendants, assuming for the purposes of this appeal the RTC's failure to consent to the sale, conclude that the tax sale here nevertheless effectively conveyed title from the Jefferson Group to the GISD (albeit, title subject to the RTC's lien).  The defendants, as successors-in-interest to the GISD, are therefore in privity with the Jefferson Group and have standing to assert the statute of limitations.[4]

---

[4] The Lorden Defendants also assert three different grounds for affirming the district court's grant of their motion to dismiss, but none is persuasive.  First, the Lorden Defendants argue that, even if CAP Holdings is correct that the tax sale was void, the defendants have gained title to the Property through adverse possession.  *See* Tex. Civ. Prac. & Rem. Code § 16.025.  But, in Texas, adverse possession is an affirmative defense, *see, e.g., Bauer v. Jasso*, 946 S.W.2d 552, 555–56 (Tex. Ct. App. 1997), and dismissal under Rule 12(b)(6) is appropriate based on a successful affirmative defense only if "that defense . . . appear[s] on the face of the complaint."  *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006).  Here, several elements of adverse possession under § 16.025 fail to appear on the face of the complaint.  *See, e.g., Spiller v. Woodard*, 809 S.W.2d 624, 626–27 (Tex. Ct. App. 1991) (listing the elements of adverse possession under § 16.025, including the element that the adverse-possession claimant must have paid property taxes on the property at issue).  Thus, the Lorden Defendants' adverse-possession defense fails, at least here at the motion-to-dismiss stage.

The Lorden Defendants also argue, with little elaboration, that the district court's grant of their motion to dismiss should be affirmed on the ground that CAP Holdings has failed adequately to allege Article III standing.  The district court correctly rejected this argument.  CAP Holdings alleges that its lien was purportedly extinguished in a tax foreclosure, and that the defendants are successors to the party (the GISD) who brought the foreclosure proceeding.  These are sufficient allegations of an "'injury in fact' that is fairly traceable to the . . . defendant[s] and likely to be redressed by a favorable judicial decision."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) ("When standing is challenged on the basis of the pleadings, we must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." (internal quotation marks omitted)).

Finally, the Lorden Defendants argue that, purely as a matter of public policy, we should not undo a decades-old tax sale and thereby cloud the title of the defendant homeowners.  This argument mistakes the nature of our task, which is, at least primarily, to

No. 14-50397

The central question in this appeal, then—at least as the parties have presented it to us—is a narrow one: whether a tax sale conducted in violation of § 1825(b)(2) is void in its entirety, or void only as to the FDIC. Consulting our precedent, we conclude that a tax sale conducted in violation of § 1825(b)(2) is void *in its entirety*. *See, e.g., Lee*, 130 F.3d at 1143.

B.

Section 1825(b)(2), as amended by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), provides:

> No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation.

12 U.S.C. § 1825(b)(2). We have considered the effect of a sale of FDIC property that was conducted "without consent of the" FDIC, and thus in violation of § 1825(b)(2), on at least three occasions. *See First State Bank-Keene*, 155 F.3d at 735–40; *Trembling Prairie*, 145 F.3d at 689–91; *Lee*, 130 F.3d at 1143. Each time, we have held explicitly that such a sale is, simply, "null and void." *First State Bank-Keene*, 155 F.3d at 739; *Trembling Prairie*, 145 F.3d at 691; *Lee*, 130 F.3d at 1143. Accordingly, the defendants' argument that a tax sale conducted in violation of § 1825(b)(2) is void only as to the FDIC is contrary to our precedent. We discuss *Lee*, *Trembling Prairie*, and *First State Bank-Keene* in turn.

In *Lee*, at a tax sale, the defendant sold property on which the FDIC held a lien without first notifying the FDIC. *Lee*, 130 F.3d at 1140. After learning of the sale, the FDIC filed suit in the district court, arguing that, because it was not provided notice, the sale was void, denying its constitutional right to

---

"apply [the law] as we find it," *Jackson v. FIE Corp.*, 302 F.3d 515, 530 (5th Cir. 2002), not to ensure that the outcome of each case accords with our notions of good policy.

due process. *Id.* Agreeing, the district court granted summary judgment to the FDIC. *Id.* This court affirmed, but on a different ground: the tax sale had been conducted in violation of § 1825(b)(2). *Id.* at 1142–43. The *Lee* court emphasized that § 1825(b)(2) "represents the express will of Congress that the FDIC must consent to any deprivation of property initiated by a state." *Id.* at 1143. Furthermore, we stated, "the meaning of [§ 1825(b)(2)] is plain, . . . a lien held by the FDIC is 'property' within the meaning of the statute, and . . . said lien cannot be extinguished through a tax sale conducted without the consent of the FDIC." *Id.* Thus, the *Lee* court concluded, the tax sale at issue was "null and void." *Id.*

*Trembling Prairie*, decided a year after *Lee*, is much to the same effect. In *Trembling Prairie*, local taxing authorities, at a series of tax sales, sold property on which a bank held a lien. 145 F.3d at 687. Before the bank's right of redemption had expired, the bank failed, and the FDIC took over as receiver. *Id.* at 690. The entity that had purchased the property through the tax sales, Trembling Prairie, petitioned to quiet title, but the FDIC intervened, asserting that, to quiet title in Trembling Prairie would extinguish the FDIC's right of redemption without its consent, in violation of § 1825(b)(2). *Id.* at 689. This court agreed. First, the *Trembling Prairie* court reasoned that the right of redemption was "property" of the FDIC within the meaning of the statute. *Id.* at 690. Next, noting that "FIRREA was drafted to help create stability and economic recovery in the financial industry" after the "crisis" in the late 1980s, the court held that a petition to quiet title was "functionally the same" as a foreclosure or a tax sale, and therefore that "§ 1825 must be construed to cover petitions to quiet title as triggering events." *Id.* at 690–91. Citing *Lee*, we concluded that "the tax sale at issue . . . violated 12 U.S.C. § 1825(b)(2) and thus is null and void." *Id.* at 691.

That brings us to *First State Bank-Keene*, which is at the crux of the parties' disagreement.    There, local authorities brought a foreclosure proceeding against certain property, naming the owner and other interested parties as defendants.  155 F.3d at 733–34.  Apparently not realizing that the FDIC held a lien on the property, the local authorities neither named the FDIC as a party, nor obtained the FDIC's consent.  *Id.* at 734.  The property was foreclosed and sold at a tax sale.  *Id.*  Four years later, the FDIC sued the purchasers, seeking to annul the sale on the ground that it had been conducted without the FDIC's consent in violation of § 1825(b)(2).  *Id.*  (After suing, the FDIC sold the loan to First State Bank-Keene, who was substituted as plaintiff, seeking to annul the sale.)  The purchasers asserted that the bank's suit was barred by the statute of limitations, but the district court rejected their argument and annulled the sale.  *Id.*  According to the district court, the sale to the purchasers was void because the sale had been conducted in violation of § 1825(b)(2).  And because the sale to the purchasers was void, it transferred no interest to the purchasers, so the purchasers were not in privity with the debtor and lacked standing under Texas law to invoke the statute of limitations against the bank's claim.  *Id.* at 734–35.

This court reversed.  But in doing so, we did not dispute that for the purchasers to invoke the statute of limitations, privity was required with the original debtor.  Indeed, we articulated the "correct[]" Texas rule as being that "'[t]he defense of limitations is generally a personal privilege of the debtor,'" such that it may be invoked only by the debtor or one who is in "privity" with him—that is, "'one who lawfully acquires property or any right on which the remedy operates, such as a lienholder or subsequent purchaser.'"  *Id.* at 735 (quoting 50 Tex. Jur. 3d, Limitation of Actions, § 18 (1986)).  Where the district court erred, *First State Bank-Keene* held, was in concluding that the tax sale had violated § 1825(b)(2).  As the court explained, Texas law provides that a

tax foreclosure has no effect on the interests of parties not named in the foreclosure proceeding. *Id.* at 736–37. "Consequently," the court reasoned, because the FDIC had not been named as a party in the foreclosure proceeding, "the tax sale did not constitute a deprivation of the FDIC's property, and thus did not violate section 1825(b)(2)." *Id.* at 739. "Unlike [in] *Lee* and [*Trembling Prairie*]," then, "the tax sale was not 'null and void' *in its entirety*"—instead, it effectively conveyed the property from the debtor to the purchasers, subject to the FDIC's lien. *Id.* Thus, the purchasers were in privity with the debtor and had standing under Texas law to assert the statute of limitations. *Id.* at 739–40.

## C.

In our view, *Lee*, *Trembling Prairie*, and *First State Bank-Keene* are clear that the law in this circuit is that, when a tax sale is conducted in violation of § 1825(b)(2), it is, without qualification, "null and void." *First State Bank-Keene*, 155 F.3d at 739; *Trembling Prairie*, 145 F.3d at 691; *Lee*, 130 F.3d at 1143.

The defendants here rely on *First State Bank-Keene* in asserting their contrary view. According to the defendants, *First State Bank-Keene* clarifies that when the *Lee* and *Trembling Prairie* courts held that a sale conducted in violation of § 1825(b)(2) was "null and void," they did not hold that the sale was *entirely* void; instead, the sale was void only as to the FDIC.[5] This assertion

---

[5] Defendant Pruitt makes the bolder argument that, even if *Lee* and *Trembling Prairie* held that sales conducted in violation of § 1825(b)(2) are void in their entirety, those cases were overruled in this respect by *First State Bank-Keene*. But "it is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 695 (5th Cir. 2014) (internal quotation marks omitted). Accordingly, even if *First State Bank-Keene* were inconsistent with *Lee* and *Trembling Prairie*—which, as we explain in the text, it is not—we would be bound to follow *Lee* and *Trembling Prairie*, not *First State Bank-Keene*. *See id.*

No. 14-50397

misreads *First State Bank-Keene*.  It is true that the *First State Bank-Keene* court held that the tax sale in that case was void only insofar as it claimed to extinguish the FDIC's lien.  But as we have explained, it reached that conclusion because it held that the tax sale did not, as a matter of Texas law, violate § 1825(b)(2).  Because the foreclosing authorities had not named the FDIC as a party in the foreclosure proceeding, the *First State Bank-Keene* court held that the resulting tax sale did not affect the FDIC's lien, and thus did not violate § 1825(b)(2).  *Had* § 1825(b)(2) been violated, however, the *First State Bank-Keene* court was clear: as in *Lee* and *Trembling Prairie*, the sale would have been "'null and void' *in its entirety*." *First State Bank-Keene*, 155 F.3d at 739.

Here, unlike in *First State Bank-Keene*, the RTC *was* named as a party in the foreclosure proceeding, and the foreclosure judgment explicitly purported to extinguish the RTC's lien.  Thus—assuming, as the defendants do, that the RTC did not consent—the sale violated § 1825(b)(2).  Accordingly, *Lee* and *Trembling Prairie* are the governing cases, not *First State Bank-Keene*.  Because *Lee* and *Trembling Prairie* hold that sales violating § 1825(b) are entirely "null and void," *see Trembling Prairie*, 145 F.3d at 691; *Lee*, 130 F.3d at 1143, and because *First State Bank-Keene* is not to the contrary, our precedent requires us to agree with CAP Holdings that the tax sale at issue here, absent the RTC's consent, is entirely void.

IV.

As we have said, this appeal comes before us from the district court's judgment dismissing the complaint based on the sole ground of the statute of limitations.  On appeal, the case took a somewhat different turn that required our consideration of § 1825(b)(2) and the effect (or lack thereof) of a sale conducted in violation of that statute.  We have decided, in accordance with our precedent, that a foreclosure sale conducted in violation of § 1825(b)(2) is

null and void in its entirety.  We make clear, however, that we have only assumed (as the defendants have) that § 1825(b)(2) was violated; we have not decided that the statute has been violated based on the facts here, and the question remains open on remand.  We have noted, however, that although there was no formal FDIC consent to the foreclosure proceedings, the RTC was represented at the proceedings by counsel who did not raise any objection based on § 1825(b)(2).  Furthermore, although we have explained that Texas law requires a party to be in privity with the original debtor in order to assert the debtor's limitations defense, we have not decided whether the defendants here have privity with the Jefferson Group.

CAP Holdings mistakenly interprets *First State Bank-Keene* as resolving this latter issue.  CAP Holdings says *First State Bank-Keene* held that, because a void tax sale conveys no legal interest to the purchaser, the purchaser lacks privity under Texas law to assert the original debtor's personal defense of limitations.  But *First State Bank-Keene* cannot be read so broadly.  Although the *district court* in *First State Bank-Keene* may have read Texas law in the way urged by CAP Holdings, *see First State Bank-Keene*, 155 F.3d at 735, *our* opinion did not expressly adopt the district court's privity analysis.  *Id.* at 734–35.  Furthermore, even if the *First State Bank-Keene* court *had* stated that, in Texas, the purchaser at a void tax sale lacks privity to assert the debtor's limitations defense, that statement likely would have been dictum, given the court's dispositive conclusion that the tax sale there was not, in fact, void.  *See supra* pp. 10–12.  Thus, this specific question—whether, under Texas law, a party who purchases property at a tax sale that is later held to be void, has privity to assert the original debtor's personal defense of limitations—has not been addressed by this circuit.  The question was not briefed or argued before us, and its answer is not immediately apparent under Texas law.  *See Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988) (stating that a

property interest sufficient to create privity may be "legal or equitable"); *In re Estate of Hardesty*, 449 S.W.3d 895, 903–04 (Tex. Ct. App. 2014) (explaining the "more liberal attitude toward the privity requirement" exemplified by "modern cases"); *see also Jordan v. Bustamante*, 158 S.W.3d 29, 39–41 (Tex. Ct. App. 2005) (describing a split among Texas appellate courts over the arguably analogous question whether the purchaser of property at a tax sale must prove the validity of the sale in order to assert a limitations defense under Tex. Tax Code Ann. § 33.54).

We therefore VACATE the district court's judgment (based solely on the limitations bar) and REMAND the case for further proceedings. If, on remand, the district court concludes that the RTC did not "consent" to the tax sale within the meaning of § 1825(b)(2), then the sale was conducted in violation of § 1825(b)(2), and is therefore void in its entirety. *See supra* Part III. The dispositive question then will become the one identified above—whether, under Texas law, a party who purchases property at a tax sale is in privity with the original debtor such that it can assert the personal defense of limitations even when the tax sale is later declared entirely void. Of course, we do not mean to suggest that the district court is confined to this analysis, but may consider, in its properly exercised discretion, any arguments, theories, or defenses presented by the parties, not inconsistent with this opinion.

VACATED and REMANDED.